MILWAUKEE AND NORTHERN ILLINOIS RAILROAD COMPANY VS. FIELD.

The act to amend the charter of the "Fox River Valley Railroad Company," approved March 11, 1859, changed the name of that company, and made some amendments to its charter, but did not create a new corporation.

The provision in the amendatory act, requiring that all moneys received by said <span>June Term,</span> corporation should be faithfully and exclusively applied by the "Milwaukee <span>1860.</span> and Northern Illinois Railroad Company," the same as under its former title, to the construction of its line of road from Milwaukee to the state line, MILWAUKEE & NORTHERN ILL. &c., must be understood as referring to the line established by the original R. R. Co. charter. v. FIELD.

That provision does not operate to prevent the building of the road from Rochester to Waukesha, as authorized by the original charter, but amounts merely to a legislative postponement of the construction of that part of the road, until the road from Milwaukee to the state line shall be completed.

A subscription for stock of said company is not invalid because it contained conditions that it should not be payable until needed for the construction of a certain portion of the railroad, and that the amount paid should be applied solely to the construction of such portion of the road, and should draw interest till a certain portion of the road should be completed.

APPEAL from the County Court of *Milwaukee* County. This action was brought by the "Fox River Valley Railroad Company" for money due on a subscription to its capital stock. Before the trial an amended and supplemental complaint was filed, which averred that on, &c., the defendant subscribed for ten shares of said company's stock, at $100 each, payable in certain installments, in the subscription and in the complaint specified, with a stipulation that the amount paid thereon should bear ten per cent. interest from the time of payment until twelve miles of said company's road should be completed; there being also written on the fly-leaf of the subscription book an agreement, forming part of said contract, signed by the president of the company, as follows:

"*Fox River Valley Railroad Stock Subscription:* It is understood by and between the Fox River Valley Railroad Company and the subscribers to the capital stock of said company whose names appear on the following pages, that the amount due on such stock, and liable to be called for by the terms of subscription, is not to be considered due or liable to be called for, until the same shall be necessary for the construction of, or procuring the right of way on, that portion of the line of road of said company extending from the village of Rochester to the city of Milwaukee, and also not until a sufficient amount of stock has been subscribed, or other means obtained, to warrant, in the judgment of the board

June Term,
1860.

MILWAUKEE &
NORTHERN ILL.
R. R. Co.
v.
FIELD.

of directors of said company, the commencement of the con-struction of that portion of the line above named, and that all sums received from said subscribers shall be applied only to the construction of said part of said road.    Milwaukee, Feb. 12, 1856."    The complaint also contained the necessary allegations to show that, according to the terms of the defendant's subscription, the sum sued for had become due.    It also averred that by an act of the legislature, approved March 11, 1859, the name of the plaintiff was changed to "The Milwaukee and Northern Illinois Railroad Company."

The answer was, in effect, a general denial, with leave, by stipulation, to give in evidence any matter of avoidance, as if specially pleaded.

On the trial the plaintiff offered in evidence the charter of the Fox River Valley Railroad Company, (Priv. Laws of 1853, p. 350), and the act amendatory of its charter, approved March 11th, 1859.    Priv. Laws of 1859, p. 119.    The former act, by its ninth section, gave the company power to construct a railroad from the southern line of Wisconsin at a point designated; "thence in a northerly course to the village of Waukesha, with power to construct a branch of said road from some point on said road north of the village of Rochester to the city of Milwaukee."    The tenth section was as follows:    "If said corporation shall not within two years from the passage of this act, commence the construction of said railroad, and within ten years complete the same, then the rights, privileges and powers of said corporation under this act, shall be void."    The act of 1859 declared that the name of the Fox River Valley Railroad Company was thereby changed to The Milwaukee and Northern Illinois Railroad Company, and enacted that nothing therein should be construed to release any stockholder from his subscription to the capital stock of the company theretofore made, but all money which should thereafter be paid on subscriptions made to said Fox River Valley Railroad Company, or which should be realized on securities, &c., should be received and receipted for in the name of the Milwaukee and Northern Illinois Railroad Company, and should be faithfully and exclusively applied by said Milwaukee and Northern Illinois Railroad

Company, the same as under the old title, to the construction of said company's line of road from Milwaukee to the state line at the point designated in the charter to which said act was amendatory. The 4th section of this act repealed the 10th section of the act of 1853.

The plaintiff then produced a witness, and offered to prove by him the other matters alleged in the complaint. The defendant's counsel objected to the introduction of any testimony, because the plaintiff was a new corporation created in 1859, and the suit was commenced prior to that time; because the plaintiff had no right to maintain its action in its present form, and because the act of March 11th, 1859, repealed and took away the right to build a railroad from Rochester to Waukesha; which objection was sustained, and the plaintiff excepted.

Thereupon, under the direction of the court, the jury rendered a verdict for the defendant, and judgment was entered thereon.

*Emmons & Van Dyke*, for appellant:

I. The defendant is not discharged from his subscription in consequence of any thing in the act of March 11, 1859. 1. In the absence of any right reserved to the legislature to amend the charter, there are many changes therein, which, if made and accepted by the company, would discharge the stock subscribers. But the change must be a *fundamental* one; one by reason of which the money of the subscriber is to be applied to an object different from that to which he pledged it by his subscription; a change of the enterprise so radical, that he may well answer, *non hæc in fœdera veni.* So long as the original objects to which he contemplated devoting his money, are preserved, and when the change sought is consistent with the terms of the subscription, and designed to facilitate the enterprise, the objection cannot prevail. Granting what was suggested by counsel on the motion for nonsuit (but what we deny), that the amendatory act took away the right to build a railroad from Rochester to Waukesha, that is not one of those fundamental changes in the charter which could affect the defendant's contract, because he had therein expressly stipulated, that his subscription should

June Term, 1860.

MILWAUKEE & NORTHERN ILL. R. R. Co. v. FIELD.

June Term,
1860.

MILWAUKEE &
NORTHERN ILL.
R. R. Co.
v.
FIELD.

be exclusively applied to the construction of the road from Rochester to Milwaukee. The defendant and his co-subscribers were clearly not interested in extending the line of road to Waukesha, but the contrary. To this point counsel cited *Union Locks and Canal vs. Towne*, 1 N. H., 44; *Middlesex T. Corp. vs. Locke*, 8 Mass., 268; *Same vs. Swan*, 10 Mass., 384; *Hart. & N. H. R. R. Co. vs. Crosswell*, 5 Hill, 383; *Winter vs. Muscogee R. R. Co.*, 11 Geo., 438; *Indiana & Ebensburgh T. Co. vs. Phillips*, 2 Penn. Rep., 184; *Irvin vs. The Turnpike Co.*, 2 id., 466; *Gray vs. Monongahela Nav. Co.*, 2 Watts & Serg., 156; *Stevens vs. Rutland & B. R. R. Co.*, 1 Am. Law Register, 154; *Macedon & B. Plank R. Co. vs. Lapham*, 18 Barb. S. C. R., 312; *Greenville & Col. R. R. Co. vs. Coleman*, 5 Richardson (S. C.), 118; *Kean vs. Johnson & Central R. R. Co.*, 1 Stockton's Ch. Rep., 401; Redfield on Railways, 91, § 10; Pierce on Am. Railroad Law, 36–46.

2. Section 1 of Article XI of the constitution of this state, entitled "Of Corporations," provides that all general or special acts, enacted under the provisions of that section, may be altered, amended or repealed by the legislature at any time after their passage. The defendant's subscription was made with reference to the charter as controlled by the constitution, which formed a part of the contract, and hence the right to alter or amend was contemplated. Many of the states have, either in charters themselves, or in general statutory provisions, or in their constitutions, reserved to the legislature a power to alter or amend charters at pleasure. Such reservation would seem to have prevailed in order to enable the legislature to compel corporations, from time to time, to conform to the changing policy of the state. There may be limits beyond which the legislature cannot go, in the exercise of this right to alter or amend, without discharging contracts which the corporation may have previously made with third parties. It might attempt to declare an alteration so utterly subversive of the objects for which the corporation was established, as would, if carried out by the company, make it unconscionable to enforce subscriptions to its capital stock, and such as would trench upon the inviolability of contracts. But such an alteration could not be made under

June Term,
1860.

Milwaukee &
Northern Ill.
R. R. Co.
v.
Field.

the constitutional reservation. It would destroy the original corporation and would be an abuse of the right to "*alter*" or "*amend.*" No instance has occurred, so far as we can learn, in which any change in a charter actually made has been decided not to be within such reserved right; and this, though we find cases where the value of the stock has been diminished by the action of the corporation under the legislative sanction; where new burdens have been imposed on the corporation, and thus indirectly on the stockholders; and where they have been compelled to amalgamate their stock with that of other corporations; and where the corporation has been allowed to contribute, by stock subscriptions, to other and independent corporations. No case has come up to the definition of a "*fundamental*" alteration. And we shall find the rule to be, that the stock subscriber will be taken to have made his contract with reference to any alteration or amendment of the charter which the legislature might constitutionally enforce upon the corporation itself; and that such is held to be the measure of the change or alteration which will not discharge the promise to pay for stock. Pierce on Am. Railroad Law, 93 and onward. The counsel, under this point, cited and commented upon the following authorities: Redfield on Railways, p. 95, and note 6, p. 94. *Cork & Youghal Railroad vs. Patterson,* 37 Eng. L. & E. R., 398; *Ware vs. The Grand Junction Water Works Co.,* 13 Eng. Cond. Ch. Rep., 126, cited by Bennett, chancellor, in *Stevens vs. Rutland & B. R. R. Co., supra; Greenville & Col. R. Co. vs. Coleman, supra; Colvin vs. Liberty & Abington T. Co.,* 2 Carter (Ind.), 511; *Railsback vs. Same Company,* 2 Carter, 656; *Northern R. R. Co. vs. Miller,* 10 Barb., 260; *Pacific R. R. Co. vs. Renshaw,* 18 Mo. Rep., 210; *Peters vs. St. Louis & Iron Mountain R. R. Co.,* 23 Mo., 111; *Central Plank R. Co. vs. Clemens,* 16 Mo., 359; *Pacific R. R. Co. vs. Hughes,* 22 Mo., 291; *Meadow Dam Co. vs. Gray,* 30 Me., 547; *Banet vs. A. & S. R. R. Co.,* 13 Ill. Rep., 504; *Sparrow vs. Evansville & Crawfordsville R. R.,* 7 Indiana, 369; *Moore vs. Hudson River R. R. Co.,* 12 Barb., 156; *Noyes vs. Spaulding,* 27 Vt., 420; *White vs. Syracuse & Utica R. R.,* 14 Barb., 559; 1 Kernan, 102; 4 id., 336, 348.

June Term,
1860.

MILWAUKEE &
NORTHERN ILL.
R. R. CO.
v.
FIELD.

II.　The fact that the subscription is a conditional one does not render it void as against public policy.　The conditions contain nothing against the spirit of the charter.　The first is, that installments should not be called for until necessary for the construction of, or the procuring of the right of way on, that portion of the line of road extending from the village of Rochester to Milwaukee.　Here is no attempt to change the line, or secure the adoption of any particular route, but the one provided for by the charter itself is expressly referred to; and it is not inconsistent with good morals or sound policy, that a stock subscriber, who was at liberty to give or refuse his aid, should insist that his money should be expended on a particular part of the road.　The execution of this stipulation could not in any way contravene any of the provisions of the charter, in their letter or spirit. Indeed, the discretion exercised in receiving these subscriptions, is clearly granted to the directors.　See secs. 4, 16 and 17 of the charter.　Another condition is, that calls for installments shall not be made " until a sufficient amount of stock has been subscribed, or other means obtained, to warrant, in the judgment of the board of directors, the commencement of the construction of that portion of the line" extending from the village of Rochester to the city of Milwaukee.　This is a wise provision, and, of course, cannot render the contract "void as against public policy."　On the subject of conditional subscriptions for railway stock, counsel cited *McMillan vs. Maysville & Lexington R. R. Co.*, 15 B. Monroe, 218; *Henderson & Nashville R. R. Co. vs. Leavell*, 16 id., 358; *Wilmington & Raleigh R. R. Co. vs. Robeson*, 5 Iredell, 391; *Carlisle vs. Terre Haute & Richmond R. R. Co.*, 6 Ind., 316; *Fisher vs. E. & C. R. R. Co.*, 7 id. 407; *Cumberland R. R. Co. vs. Baab*, 9 Watts, 458; *Chapman vs. Mad River & L. Erie R.R. Co.*, 6 Ohio St. Rep., 119; *Central T. Co. vs. Valentine*, 10 Pick., 142, 146; *U. & S. R. R. Co. vs. Brinckerhoff*, 21 Wend., 139; *Butternuts & Oxford T. Co. vs. North*, 1 Hill, 518; *Ft. Miller & Ft. Edward P. R. Co.*, 17 Barb., 579; Pierce on Am. Railroad Law, 70 *et seq.;* Redfield on Railways, 77, 78 and notes.　On the subject of public policy, see Story on Cont., sec. 546; *Kellogg vs. Larkin*, 3 Chand.

Wis. Rep., 133. Another objection urged to the validity of these subscriptions was founded on the agreement that paying subscribers should receive interest on amounts paid, until twelve miles of the road were completed and in operation, and the case of *Troy & Boston R. R. vs. Tibbits*, 18 Barb., 297, was cited in support of the objection. In this case Tibbits had stipulated for interest *until the entire road was done*, thus making it to his advantage to thwart the ultimate completion of the work, so long as it was earning his interest. In our case a stock subscriber has agreed to receive interest until twelve miles of the road shall be completed. It is very evident why he should demand it, and why directors should be willing to yield to such a condition. No man would stake his capital to-day, with no promise of a dividend for five years, against the same amount to be subscribed and paid several years hence, and let the last subscriber reap the same benefit as himself from the investment. But whether the court were right or wrong in the case referred to in 18 Barbour, the 3d and 4th sections of the plaintiff's charter show that the reservation of interest to these stock subscribers was within the discretion of the directors. See also the numerous cases already cited on the subject of conditional stock subscriptions. The issuing of "preferred stock" has been practiced by many railway companies, and in a number of the states of the union, without any express authority in their charters; and very large amounts of money have been advanced by European and American capitalists upon such stock, in the belief, (and with the highest professional authority in the land begetting the confident belief,) that this preferred stock was valid. If such stock is valid, then, by parity of reasoning, this merely interest-paying subscription is valid. We are not aware that any case has arisen where the courts have been called upon to decide upon the validity of such issues of preferred stock; but we believe that the opinion expressed by Judge REDFIELD in his Treatise on Railways, p. 593, that the power exists to create such stock, will be followed by our courts.

*Jason Downer*, for respondent:

I. The act of March 11th, 1859, in fact, created a new

June Term,
1860.

MILWAUKEE &
NORTHERN ILL.
R. R. Co.
v.
FIELD.

corporation, and transferred the property of the old to it. It was conceded at the trial in the court below, that on the line of road authorized by the original charter, extending from Waukesha to the point of junction with the Milwaukee branch, no work of any considerable amount had been done, and not a rod of it finished. The act of 1859 provides that all the funds of the company shall be applied exclusively to the construction of the line of road from Milwaukee to the state line, and leaves the company entirely without means to construct the line from the Milwaukee branch junction to Waukesha. It is, therefore, equivalent to a repeal of so much of the charter as authorized that line to be constructed. It does more; it authorizes an entire new line from the city of Milwaukee to the state line. The southern point at the state line, and the Milwaukee terminus, are the only things in common between the roads authorized to be constructed by the two charters. If then, the act does not create a new corporation, the alteration thereby effected in the powers of the company, is such as will release the defendant as a stock subscriber. *Middlesex T. Cor. vs. Locke,* 8 Mass., 268; *H. & N. H. R. R. Co. vs. Croswell,* 5 Hill, 388; 1 N. H. Rep., 44; 2 Penn. Rep., 184; *M. & B. Plank Road Co. vs. Lapham,* 18 Barb., 312; *Winter vs. Muscogee R. R. Co.,* 11 Geo., 438; 27 Miss., 517; *Stevens vs. R. & B. R. R. Co.,* 1 Am. Law Register, 154; Pierce on Am. Railroad Law, 78–100. The reservation of a right to amend and alter the charter, is not sufficiently broad to cover a case like this. Pierce on Am. Railroad Law, 98 and 99; 7 Ind., 369. 1. The constitutional right to amend the charters of corporations, extends only to such acts as are of a political character, or for the public benefit. In this case the act of 1859 was evidently obtained at the solicitation of the directors of the corporation; at least, they —the new corporation and the old—having accepted it, it is the same as if the amendment was procured at their request. The alteration is, therefore, to be regarded as the voluntary act of the corporation. 2. The constitutional provision as to alteration applies only as between the corporation and the state, not between the former and its stock subscribers, or persons contracting with it. The corporation undertakes

to do certain things, and these it must do. If the state takes away its power, it may be its misfortune, but the persons contracting with it, are not for that reason to suffer.

II. By the contract of subscription the defendant was not to pay his subscription until the same should be necessary for the construction of, or the procuring of the right of way on, that portion of the line extending from Rochester to Milwaukee. The plaintiff avers, that at the time when said payments were called to be paid, the amounts so called for were necessary for the construction of said line between those points. But this was before the act of 1859, which so alters the line of road, that Rochester is not a point in the new line. And it was necessary, in order to admit any testimony, after the passage of the amendatory act, to aver that Rochester was a point in the new line, and that said moneys were still necessary to construct the line between Rochester and Milwaukee.

III. The whole subscription contract, as set forth in the complaint, is illegal, against the policy of the law and void.

*By the Court*, DIXON, C. J. It is very evident from the   July 30. provisions of the act of March 11th, 1859, that no new corporation was contemplated. It purports to be, and is, in fact, only an act changing the name of the old corporation, and making some slight amendments of its charter. If the name had not been changed, we doubt whether the counsel would ever have insisted that its provisions amounted to the creation of a new company. If the legislature had merely changed its name, by declaring that the Fox River Valley Railroad Company should thereafter be known and called the Milwaukee and Northern Illinois Railroad Company, and thereafter should sue and be sued by that name, &c., there can be little doubt that it would in law have been quite as effectual for the purposes intended, and that the company known by this new name would have succeeded to, or rather continued in, all the rights which it formerly possessed. It certainly cannot alter the question that the legislature have expressly declared that such shall be the effect of the act. Nor does this declaration afford any rea-

June Term,
1860.

MILWAUKEE &
NORTHERN ILL.
R. R. Co.
v.
FIELD.

son for saying that a new corporation was created. Neither do we think that the act made, or authorized the company to make, any change in the line of its route between the city of Milwaukee and the state line. After having changed its name, the act provides that nothing in it shall be construed to release any stockholder from his or her subscription theretofore made to the capital stock of the company; and that all money which shall thereafter be paid on subscriptions made to the Fox River Valley Railroad Company, or which shall be realized on securities given or to be given, shall be received and receipted for in the name of the Milwaukee and Northern Illinois Railroad Company, and shall be faithfully and exclusively applied by it, *the same as under the old title, to the construction of the said company's line of road from Milwaukee to the state line;* that holders of stock under the old, shall be entitled to receive in exchange certificates of stock under the new title; and *that the company under its new title shall be authorized to use all the rights, privileges and immunities contained in its charter as the Fox River Valley Railroad Company.* Whether called by the old or the new name, it is spoken of throughout as one and the same company; and where the act declares that " the moneys realized shall be faithfully and exclusively applied as under the old title to the construction of the company's line of road from Milwaukee to the state line," it must be understood as the line which was established by the charter.

The repeal of section ten of the original charter can by no means be said to deprive the company of the power to build the road from Rochester to Waukesha. Its authority to do this is conferred by section nine, the provisions of which are left unimpaired. Its repeal operates generally to remove the restrictions, as to the time of the commencement and completion of the road, which were imposed by it. Nor can we say that the declaration that the moneys realized shall be applied faithfully and exclusively to the building of the road from Milwaukee to the state line, operates to prevent the construction of that portion of it which extends from Rochester to Waukesha. When construed in connection with section nine and other parts of the charter, which remain in full

June Term,
1860.

MILWAUKEE &
NORTHERN ILL.
R. R. Co.
v.
FIELD.

force, it amounts merely to a legislative postponement of the construction of the latter part of the road, until the former shall be completed.

This view of the statute of 1859 disposes of most of the objections raised by the respondent's counsel. There is certainly no room for saying that the stipulation for the application of the moneys subscribed, to the construction of that portion of the road extending from the village of Rochester to the city of Milwaukee, is against public policy. The argument of the appellant's counsel is a complete answer to this objection.

The powers conferred on the board of directors by the sixth section, are ample for the purpose of enabling them to agree to pay interest' on the stock subscribed and paid for, until twelve miles of the road should be completed and in operation. In respect to all contracts, covenants and agreements touching their corporate affairs and business, the power conferred upon the directors of this company is of that enlarged and plenary character usually found in the charters of railroad corporations in this state; and it is not the province of this court, by violating the rules of plain grammatical analysis, to restrain or abridge this power, simply because it has been improvidently exercised by the managing officers, or exerted in a manner seriously detrimental or injurious to the best interests of the corporation or its stockholders. This court is no more the guardian of the interests of corporations than of private individuals; and can no more protect them from the effect of hasty or ill advised bargains or agreements, provided they have the authority to make them, than it can individuals. We know of no authority of law for drawing any such distinction. The question of what powers the company should possess, was a matter of legislative discretion in the first instance, and the legislature having exercised it, it is not for this court to say that they were improperly granted. As to past transactions, the evils, whatever they may be, must be endured. As to the future, the power of correction, if its exercise be needed, lies with the legislature.

The objection, that a new suit should have been com-

menced after the change of name, we do not understand to be insisted upon. If it were, it is too technical to be countenanced in these days of liberality in all matters of amendment.

Many of the points so properly raised and so ably argued by the counsel in their printed briefs, have not received our attention in this opinion, partly from want of time, but principally because the appearance of those arguments in the report seems to render comment or discussion by us unnecessary.

The judgment of the county court must be reversed, and a new trial awarded.