LAWSON VS. THE MILWAUKEE & NORTHERN RAILWAY Co. and others.

RAILROADS: MUNICIPAL SUBSCRIPTIONS TO RAILWAY STOCK.

1. The power of the legislature to authorize subscriptions by municipal corporations to the capital stock of railroad companies, is no longer an open question in this state.

2. Chap. 25, Laws of 1870, entitled "An act to authorize certain counties, towns, cities and villages to aid the Milwaukee and Northern Railway Company," and Ch. 76, Laws of 1871, entitled "An act to amend Ch. 25, General Laws of 1870, entitled," &c. [repeating the foregoing title], sufficiently express their subjects in their titles to meet the requirements of sec. 18, art. IV of the constitution.

3. The acts above named are, however, not private or local acts within the meaning of said constitutional provision.

4. The question whether said acts are invalid so far as they attempt to authorize subscriptions to the stock of the company *by towns through which the road will not run,* will not be considered when raised by the tax-payers of a town through which the road *is* required to run, either by the charter of the company or by the conditions of the subscription made by such town.

5. Provisions of said acts by which the vote of the town as to subscribing for stock is required to be based upon a written proposition from the company, defining the amount and kind of stock to be subscribed for, the mode and times of payment, the kind of security to be given, &c., and which *may* contain stipulations as to the location of the road, depot grounds, &c., in said town—*held* to be valid and salutary.

6. The proposition of the company to the town of M. in this case stipulated that upon a right of way being furnished through said town, without expense to the company, it would connect its road by a side-track with a certain other side-track in said town, and would not connect its road, within three miles of the village of M., with any other railway so as to permit the passage of cars from one road to the other, except in a certain described locality, without the consent of the town. *Held,* that these conditions cannot be pronounced contrary to public policy, and do not invalidate the contract.

7. It does not appear that the restriction upon the company as to making connections with other roads is designed to injure or will injure other towns; and *quære,* whether plaintiff, who sues as a resident and tax-payer of said town of M., could raise that objection.

8. Said acts do not restrict the *amount* of bonds which may be issued thereunder by a *town*, but only the amount to be issued by any *city or incorporated village*. Sec. 1 ch. 76, laws of 1871.

9. Where a notice of election is to be given by the board of supervisors of a town, it may be given by order of the board, signed only by their clerk.

APPEAL from the Circuit Court for *Winnebago* County.

The opinion states the case.

*Moses Hooper*, for appellant.

*O. H. Waldo, contra.*

COLE, J. This is an action by the plaintiff, an individual taxpayer of the town of Menasha, on his own behalf and on behalf of all others, owners of real and personal property in that town, to cancel a stock subscription, made by the officers of the town, to the capital stock of the *Milwaukee and Northern Railway Company*, and to restrain such officers from executing and delivering its bonds in payment of the stock thus subscribed. A motion was made for an injunction upon the complaint, answer, and affidavits read on the hearing of the motion. The court below denied the motion, and also dissolved a preliminary injunction which had been granted; and the appeal is from this order.

It is insisted on the part of the defendants, that the plaintiff, a mere individual taxpayer, complaining of no special injury to himself, but only threatened with an injury common to the whole body of taxpayers, cannot maintain this action. On account of the view we entertain of the case presented in the complaint on the merits, it is unnecessary to consider this objection. We are fully satisfied that the plaintiff, on other grounds, was not entitled to the relief he sought.

All the really important questions raised and discussed on this appeal have been decided by this court. In the first place the broad ground is taken, that the legislature cannot authorize these subscriptions to the capital stock of a railroad on the part of the towns, counties and incorporated villages of the state.

What force there might be in this objection were the question now open to consideration upon principle, we shall not stop to enquire. When the question as to the validity of these subscriptions first came before the court, in *Clark v. City of Janesville*, 10 Wis., 136, and *Bushnell v. Beloit*, id., 196, we felt bound by the great current of authority which sustained them elsewhere, regardless of what might be our own views upon the original question. We affirmed then the power of the legislature to authorize these subscriptions on the strength of the decisions in the other states; and we have said, in one of the latest decisions we have made upon the subject, that such subscriptions must stand so long as the legislature sees fit to authorize them, and the towns or municipalities to make them, or until the people deem it expedient to change the constitution in this particular." (*Per* Chief Justice DIXON, in *Phillips v. The Town of Albany*, 28 Wis., 340.) The subscription in the present case was made under the authority granted by chapter 25, Laws of 1870, and the amendatory act of 1871 (chapter 76, Laws of 1871.) These acts, it is insisted on the part of the plaintiff, are unconstitutional, because they are private or local bills, within the meaning of section eighteen, article four of the constitution, and the subject is not expressed in the title. The title of the first law is " An act to authorize certain counties, towns, cities and villages to aid the Milwaukee and Northern Railway Company," and the subsequent enactment is entitled " An act to amend chapter 25 of general laws of 1870, entitled an act to authorize certain counties, towns, cities and villages to aid the Milwaukee and Northern Railway Company." It will be seen that the subject expressed in the title of these enactments is to empower certain counties, towns, etc., to aid a certain railway corporation—that is, to aid in the construction of such railroad by subscribing for the capital stock and taxing the inhabitants or property within their limits to pay the indebtedness thereby incurred, which is the precise thing contemplated by these acts. Perhaps no language could be used within the narrow compass of a title,

which would more accurately and clearly express the subject of these laws than that employed in the titles. These titles sufficiently indicate the character of the bills, and the full scope and object of their provisions. There certainly was no danger that either the members of the legislature or the people affected by these enactments, would be misled by the titles. For the titles express the subject in words which would inform all concerned of the real intention of the acts and the nature of their provisions.

But it is further objected, that these laws are uncertain in their scope and application. They authorize " *certain counties, towns, cities and villages to aid,*" etc., without naming and designating them in the titles. But we do not think the provision in the constitution requires any such particularity in the title, and it would certainly be very inconvenient to observe it in practical legislation. Besides, it will be borne in mind that according to the decisions of this court, this is not, strictly speaking, a local or private law, within the meaning of the constitution. 10 Wis., 136; 13 id., 432; 14 id., 378; 20 id., 50. And a still further most satisfactory answer to this objection was given by the counsel for the respondents, who said: that what towns, counties, etc., might aid the company in the construction of its road, could readily be ascertained by a reference to its charter (chap. 94, P. and L. Laws of 1870,) which states where the road is to be located; while these acts themselves make the most ample provisions for giving notice to the inhabitants of all towns which might be called upon to render such aid.

Again it is objected that these acts are invalid for the reason that they attempt to authorize any town or incorporated village, whether immediately on the line of the road or not, to subscribe for and take stock in the company. Whether this objection would have force in a case to which it was applicable, we need not determine; for it is very obvious that it can have no weight here. The town of Menasha is on the line of the road, and the

proposition of the company to the town, which was submitted to the electors, provided that the bonds were not to be delivered by the trustee to the company until it had built and "made ready for use a continuous railroad from the city of Milwaukee, or from the point of junction of the road of said company with the road of the Milwaukee and St. Paul Railway Company in Milwaukee county, to a point in the town of Menasha, in the county of Winnebago, east of Toyco street, west of Depere street and north of Third street, in the village of Menasha, shall have erected suitable building or buildings for both passenger and freight business at that point, shall have run trains of cars from the city of Milwaukee to such depot, and shall have given notice," etc. This shows that aid was not to be furnished by a town which was not on the line of the road, and which would not secure all the benefits and advantages which the construction of the road through its limits might afford. So far as the town of Menasha is concerned, the objection is entirely without foundation, and must be disregarded. *Phillips v. Town of Albany.* If other towns, not on the line of the road, should subscribe to its capital stock, and tax its inhabitants to raise the means to pay therefor, the question would then properly arise, whether the legislature could authorize aid, except to construct a road within the limits of the locality to be taxed. But until that question is presented for a decision, we do not wish to be understood as expressing any opinion upon it.

By the provisions of these acts, whenever the company should desire a town to subscribe to its capital stock, it was required to make and deliver to the town clerk of such town a proposition in writing, stating the amount and kind of stock which the town was desired to take and subscribe for, and the manner in which it was desired such town should pay or secure the payment of such subscription ; and upon receiving the proposition, the clerk was required, immediately to call a meeting of the supervisors of the town to take into consideration the proposition of the company, and thereupon a notice of an election was

to be given, for the purpose of getting the expression of the electors of the town upon the proposition. If the votes in favor of the proposition should be equal to a majority of the votes cast at the next preceding town meeting, and when the line of the road was located and established in accordance with the proposition made by the company and duly recorded, then the subscribers were to subscribe for the stock, to the amount and on the terms specified in the proposition.

An objection is taken to this feature in these enactments, because it allowed the making of a bargain by the company on the one hand and a majority of the electors on the other, which will bind the property of the minority. And it is said that it is hard enough for the legislature to provide that on certain terms and conditions, and for certain considerations, a majority may make a stock subscription to bind a minority; but it is going much farther to say the legislature may authorize a majority to bind a minority upon such considerations as may be extended to this majority by the railway company. It appears to us, however, that these provisions are highly salutary, and are to be approbated rather than condemned. They enable the citizens who are asked to aid in the construction of the road, and whose property and business interests and relations are directly involved in the work, to express their wishes upon the proposition of the corporation. They have not only a voice in determining the question whether aid shall be given, but can further say by their votes whether the proposition submitted is satisfactory in respect to the kind and amount of stock which the town is desired to subscribe, the rate of interest, and the time and manner of payment of the debt which it is proposed to create. Certainly the tax payers of the town are vitally interested in these matters, and in all the arrangements which shall be made for raising money by taxation to discharge the burden assumed. True, in the proposition which might be submitted, there might be various stipulations relative to the location of the track, depot grounds, and other accommodations, and the

electors might in the votes cast be influenced by these consid-erations. But why should they not regard these matters in deciding the question whether aid shall be given for the con-struction of the road within their town? It seems to us highly proper and wise to submit these various matters to their decis-ion, and allow them to say whether they are willing to give the aid desired, upon the terms and conditions proposed by the company.

But it is further said that the proposition itself, which was submitted, contained conditions contrary to public policy and good morals, and which rendered it void. The conditions com-plained of, are those where the company agrees, upon a suita-ble right of way being furnished, without expense to the com-pany therefor, to connect its road by a side track with a side track on the water power on the north branch of Fox river in Menasha, and that the company would not extend its track and connect the same within three miles of its depot in the village of Menasha with any other railway so as to permit the passage of cars from one road to the other, otherwise than north of the north branch of Fox river or west of lake Buttes des Mortes, without the consent of the town of Menasha.

But we are really unable to perceive any valid objection to these stipulations. It is said that the one in respect to con-necting the main track, by a side track, with the existing side track, is in the nature of a bribe held out to the owners of property on the water-power. It must be obvious that this in-ducement of building the side track which was held out to the owners of property on the water-power, though it might be greater in degree, yet it was the same in kind as that to the voters of the town. In both cases the motive for favoring the proposition and voting aid would be some advantage or benefit secured by the construction of the road through the town. The people would not be willing to take stock and raise a tax to pay for it, unless they expected some compensation or equiv-alent for their money. It is the public advantages and busi-

ness conveniences secured by such improvements which induce towns and cities to aid in their construction. Some kind of property and some branches of industry are necessarily more benefitted than others. But railroads are undeniably works of great general utility—furnishing, as they do, such great facilities for the transportation of passengers and products from one part of the country to another; and it is for the purpose of securing these general and local advantages and benefits that people are ready to tax themselves for them. Public and private interests would doubtless be promoted by the construction of the side track; and we can see no objections that the people interested should secure all the advantages possible from the giving of the desired aid. The fact that a subscription by an individual is conditional does not invalidate the subscription (12 Wis., 340; id., 512), unless the nature of the condition is such as to make it void on the ground of public policy. And it seems to us that the town might make it a condition to furnishing aid, that the road should be located on a given line, and that the depot buildings should be established at a given point, or that certain side tracks should be made to accommodate the business interests of its citizens.

But it is said that the stipulation that the company would not extend its track and connect the same with another road within three miles of its depot, in the village of Menasha, is an illegal restriction of its corporate power, and renders the proposition or contract void. This restriction, it is said, was placed upon the company at the instance of the town of Menasha, and was plainly intended to secure votes. It is highly probable that this restriction was designed to secure some local advantage to the town if it would aid in the construction of the road. We cannot see that it differs in principle from other conditions which are usually imposed—such as the location of the road, the situation of the depot buildings, and arrangements of that character. It is suggested that by this restriction the company put it out of its power to extend the ordinary facilities of com-

merce to other localities along the line of its road. But there is no fact established in the case which will authorize such an assumption. It appears that the town of Menasha has stipulated for certain conditions upon subscribing for stock. It is fair to assume that these conditions are for the benefit of the town. The plaintiff is a tax payer and property owner in Menasha. Why should he complain that the company, by its agreement with his town, has disabled itself from extending business accommodations to some rival locality, if indeed it should turn out that it has done so? Besides, we agree with the counsel for the defendants that there is nothing that we can discover in the proposition which justifies the assumption that it is intended to injure some other town. The claim, it seems to us, is without foundation.

The only restriction upon the amount of bonds issued under the act is found in the last clause of section 1, which only applies to "*any city or incorporated village*," and not to towns.

The notice of the election was in conformity to the law. It was given by order of the supervisors and signed by the town clerk. We do not suppose it was necessary for the supervisors themselves to sign the notice.

We have endeavored to notice briefly such questions as were raised by the counsel for the plaintiff, and which we deemed material.

We think the order appealed from must be affirmed.

*By the Court.*—Order affirmed.