SUPERVISORS OF THE COUNTY OF PORTAGE *vs.* WISCONSIN CENTRAL RAILROAD COMPANY & another.

Suffolk.    Nov. 21, 1876. — Jan. 6. 1877.    AMES & ENDICOTT, JJ., absent.

Section 3 of article 11 of the Constitution of Wisconsin concerning the "organization of cities and incorporated villages," and restricting their power of taxation, does not apply to counties.

The Legislature of Wisconsin may authorize counties to subscribe for stock in aid of a railroad, and to issue bonds in payment thereof.

A railroad corporation, having the right to construct its road between two places, by a circuitous route, and intending to apply to the Legislature for authority to construct a more direct road between these places, may, before such authority to build is obtained, or any location thereof made, make a valid contract for a sale of its stock, conditioned upon the building of the latter route.

A railroad company was authorized to submit, and a county to accept by popular vote, a proposition for the sale of its stock to the county, signed by its president or secretary, and under its common seal. A proposition was made, signed by its vice-president, and under its common seal; and this proposition was accepted. Afterwards, a statute was passed providing that no defects or irregularities in any of the proceedings, preliminary to the acceptance, should invalidate such agreement. *Held*, that the defect of form in signing the proposition did not invalidate the contract.

By the terms of a contract between a railroad corporation and a county, reciting that the former proposed to build a railroad from A. to B., the county was to give its bonds to a certain amount, and take stock in exchange. The bonds were to be delivered to a trustee in trust to deliver the same to the railroad corporation, whenever a continuous road between certain points named should be built. To this was added a condition that the railroad corporation should not be bound to build any portion of the road between the points named, unless the municipal corporations

on the line of the proposed road should agree to make a similar exchange of bonds for stock, to the amount of $400,000, to be deposited with the same trustee. It was then provided that if the road should not be begun in six months after the said sum of $400,000 should be subscribed by the municipal corporations, and the bonds thereof issued and deposited with the trustee, " or shall not be built from A. to B. within two years from the deposit of such bonds with the trustee," the county may withdraw their bonds and surrender their stock. At the time this contract was made, the railroad corporation had not, by its charter, authority to build the road as proposed. The bonds of the county were deposited with the trustee in February, 1872. The municipal corporations referred to in the agreement only subscribed for stock to the amount of $84,000. In February, 1875, the railroad corporation got authority from the Legislature to build the road on the line proposed, and it was at once begun and carried on with all reasonable dispatch. In September, 1875, the county demanded back the bonds of the trustee, and sought to rescind the contract. In December, 1875, that part of the road was completed which entitled the railroad corporation to the bonds. *Held,* on a bill in equity, filed by the county, to determine the trust, that the contingencies, upon which the plaintiff had the right to reclaim the bonds, had not occurred. *Held, also,* that the court could not say as matter of law that the reasonable time, within which the road was by implication to be built, had expired. *Held, also,* that the proposition, after its acceptance, became a valid contract between the county and the company.

BILL IN EQUITY, filed September 20, 1875, against the Wisconsin Central Railroad Company and the National Exchange Bank of Boston, praying that certain bonds of the county of Portage in the State of Wisconsin, which had been delivered in trust to the defendant bank, might be ordered to be delivered up to the plaintiffs, and that the trust should be determined. The case was heard before *Ames*, J., who reserved it for the consideration of the full court on the pleadings and a report, and was as follows :

In May, 1866, the Winnebago and Superior Railroad Company was chartered by the Legislature of the State of Wisconsin, with authority to construct a railroad from Doty's Island, on the most direct and feasible route to Bayfield ; thence to Superior, on Lake Superior, by way of Waupaca and of Stevens Point. In the same month, the Portage and Superior Railroad Company was chartered by the same Legislature, with authority to construct a railroad from Portage City, by way of Ripon and Berlin, to Stevens Point ; and thence to Bayfield and Superior. In April, 1869, these two corporations were consolidated, under the name of the Portage, Winnebago and Superior Railroad Company, and this new company was authorized in February, 1871, to take the name of the Wisconsin Central Railroad Company.

In March, 1869, a statute was passed by the Legislature of Wisconsin, containing the following provisions: "Section 1. It shall be lawful for the proper officers of any county through any portion of which any part of the railroad of the Portage and Superior, or of the Winnebago and Superior Railroad Company, or of the company consolidated by the two said companies from Portage City to Lake Superior, and from Doty's Island to Lake Superior shall run, or any town or incorporated city or village in such county, to levy a tax upon all the taxable property in such county, town, incorporated city or village, to aid in the location and construction of any portion of such road, and for the purchase of right of way and depot grounds, and for like purposes, to issue the bonds of any such county, town, incorporated city or village, in such sum or sums, and upon such terms and conditions as shall be agreed upon by and between such county, town, incorporated city or village, and the said Portage and Superior Railroad Company, or the said Winnebago and Superior Railroad Company, or any railroad company which may be consolidated by or grow out of the two said companies ; but no such tax shall be levied nor bonds issued by any such county, town, incorporated city or village, unless a majority of the legal voters of such county, town, incorporated city or village, voting on the question, shall first have voted in favor of such tax or the issuing of such bonds, in the manner hereinafter provided.

" Section 2. Whenever either of said railroad companies shall require aid from any such county, town, incorporated city or village, it shall make and deliver to the clerk of the board of supervisors of such county, the town-clerk or clerk of such incorporated city or village, as the case may be, a definite proposition in writing, signed by the president or secretary of said railroad company, and sealed with the common seal of said company, which proposition shall contain a distinct statement of the amount of money or bonds desired, and the terms and conditions and considerations upon which the same will be required to be paid and delivered to said railroad company."

This act was amended by a statute passed March 1, 1871, and made applicable to the Wisconsin Central Railroad Company.

On November 4, 1871, the following proposition was made and delivered to the clerk of the board of supervisors of the county of Portage :

" The Wisconsin Central Railroad Company proposes to construct a line of railroad from Stevens Point, in the county of Portage, to Portage, in the county of Columbia, a distance of about seventy-six miles, provided the municipal corporations along or adjacent to said line of road shall vote to take, and take the stock of this company in the amount of four hundred thousand dollars in exchange for their corporate bonds to be issued in like amount to this company. And the said Wisconsin Central Railroad Company proposes to the county of Portage to take one thousand shares of one hundred dollars each (being one hundred thousand dollars in the aggregate) of the common stock of said company, and to secure payment thereof in the manner and on the terms hereinafter mentioned :

" First. This proposition shall be submitted to a vote of the legal voters of said county in the manner prescribed in and by the act entitled ' An act to authorize certain counties, towns, cities and villages, to aid in the construction of the land grant railroad from Portage City, and from Doty's Island to Lake Superior,' approved March 9, 1869, and the several acts amendatory thereof.

" Second. If a majority of the legal voters voting on that subject at such election in said county shall vote in favor of such proposition, then it shall be the duty of the proper officers, to wit : the chairman of the board of supervisors and county clerk of said county, without delay, for and in behalf of said county to subscribe for one thousand shares of the said stock of said company, of one hundred dollars each, being one hundred thousand dollars in the aggregate, and to secure payment for the stock so subscribed at par, by the bonds of said county payable to bearer ; and for that purpose they shall duly execute under their hands and seals one hundred bonds of said county of one thousand dollars each, being for the principal sum of one hundred thousand dollars in the aggregate, in a usual form of corporation bonds, dated January 1st, 1872, bearing interest at the rate of eight per centum per annum, payable in equal semi-annual instalments, with suitable coupons or interest warrants attached, the principal sums payable on the first day of January, 1892, with the privilege of redemption after January 1st, 1882, and both principal and interest payable to bearer at some specified place in

the city of New York, or city of Boston; and said bonds shall be immediately perfected and delivered by said officers of said county to the National Exchange Bank, in the city of Boston, in trust to be delivered to said railroad company as hereinafter directed. Whenever said company shall have built and made ready for use a continuous railroad from the city of Stevens Point, to the south line of the county of Portage on a line to be run through the towns of Plover, Buena Vista, and Pine Grove, within one hundred and twenty rods of the Empire House in the village of Plover; have constructed freight and passenger buildings within one hundred and twenty rods of the said Empire House; have constructed like buildings at at least one suitable point between the said village of Plover and the town of Plainfield in the county of Waushara; shall have delivered within sixty days after the acceptance of this proposition to the chairman of said county for execution, the said bonds; and shall have deposited one thousand shares of its said stock in the said bank to the credit of the said county, and shall have obtained the certificate of the chairman of the board of supervisors of said county or of the secretary of state of the State of Wisconsin, that said road has been so constructed, it shall become entitled to receive said bonds with the interest coupons thereon to become due from and after the time cars shall have been run over said road from Stevens Point through said county, and the past due interest coupons shall be cancelled and returned by the trustee to the treasurer of said county, that said bonds shall contain a provision in substance that the same are to be valid only on its being certified thereon by some officer of said bank that it has been certified to said bank by the said chairman or secretary of state that the conditions upon which the said bonds were voted and issued have been performed, and it shall be the duty of the trustee, with whom said bonds are deposited in trust as aforesaid, to deliver said bonds to the president of said company, or in such other person as the board of directors of said company shall authorize to receive the same. This proposition, except as to amount, is also submitted to other municipal corporations on and adjacent to said line of road, and is upon this express condition, that said railroad company shall not be bound to construct any portion of its proposed road between Portage City and Stevens Point, un-

less the said municipal corporations shall agree to take the common stock of the said company to the amount in the aggregate of four hundred thousand dollars, and shall issue and deposit with said National Exchange Bank their bonds to a like amount in exchange therefor; and if the said road shall not be commenced in six months after the said sum of four hundred thousand dollars of stock shall have been subscribed by said municipal corporations and the bonds thereof issued and deposited with said bank therefor to the said amount of four hundred thousand dollars, or shall not be built from Stevens Point to Portage City, or to some road connecting therewith within two years from the deposit of such bonds with the trustee as aforesaid, the county board of said county may, in their discretion, withdraw said bonds from said trustee, and surrender said stock.    Upon the due execution and delivery of said bonds to such trustee as aforesaid, the said The Wisconsin Central Railroad Company shall immediately make and deliver to the same trustee full paid certificates of the stock of that company for said full amount thereof so subscribed by or in behalf of said county, and whenever said trustee shall deliver any of said bonds to said company he shall, on request thereafter, deliver to the treasurer or other authorized agent of said county of Portage, for the use of that county, an equal amount of said full paid certificates of stock of said company. While such stock is in the hands of such trustee as aforesaid, it ·hall not entitle any one to vote at any meeting of the company; ut after its delivery as aforesaid by the trustee to said county it shall entitle the holder thereof to the same privilege of voting that is enjoyed by the other stockholders.

" The treasurer of the said county shall, upon the order of the proper officer or officers thereof, pay to the person or persons who may be entitled thereto the necessary expense of printing and issuing said bonds.

" In witness whereof said company caused these presents to be sealed with its corporate seal, and signed by its president, the day and year first above written.

"Geo. Reed, V. Prest. Wis. Cen. R. R. Co."    (Seal.)

Gardner Colby was the president of the railroad company at the date of the proposition, and ever since, and is a resident of

Boston; and the vice-president, George Reed, resided in Wisconsin, and acted as president in fact in the absence of Colby.

This proposition was submitted to the voters of the county, and was accepted, at an election held December 2, 1871, by the vote of a majority of the legal voters voting thereon; and the result was certified in the manner required by the statute. In February, 1872, in pursuance of the vote, the bonds in controversy were prepared, signed and sealed, and placed by the county authorities in the hands of the defendant bank, upon the conditions and trusts set forth in the written proposition above described, but upon no other or different conditions. Similar propositions were made to other municipal corporations on or adjacent to the line of road described in said proposition, but the subscriptions and bonds obtained in aid of the railroad from them amounted to the sum of $84,500 only.

The road to be built by the said railroad company, as described in said "proposition," is in exact conformity to the direct line between Stevens Point and Portage City, and makes a part of that line. This direct line is seventy-six miles in length. The line from Portage City to Stevens Point, by the way of Ripon and Berlin, (supposing it to enter Portage County at its southeast corner,) would be one hundred and fourteen miles in length. If, instead of entering that county at its southeast corner, it were so drawn as to join the line described in the proposition at its southerly terminus, it would increase the distance between Portage City and Stevens Point, by way of Ripon and Berlin, about six miles.

By a statute of Wisconsin, passed March 19, 1873, it was provided that, " Whenever a county, town, incorporated city or village, by virtue of the provisions of any law of this state, shall have voted and agreed to aid in the construction of a railroad, by subscriptions to its stock and the issue of bonds in payment thereof, and the county, town, city or village shall have subscribed on the capital stock subscription book of the company, in conformity thereto, for the amount so voted in aid of the construction of the road, and the railroad company, relying thereupon, shall have in good faith performed and carried out its part of the agreement and shall have constructed the same, as agreed upon, no defects or irregularities in any of the proceedings pre-

liminary to such election shall invalidate such agreement, and the subscription to the capital stock by said county, town, incorporated city or village shall be conclusive evidence of the regularity of all proceedings and the validity of the contract so entered into."

By another statute, passed February 6, 1875, the Wisconsin Central Railroad Company was authorized and required to locate and construct its railroad in the most direct and feasible route from the city of Portage to Stevens Point. This act was ratified by the Congress of the United States, by an act passed March 3, 1875. Nothing has been done towards the construction of the circuitous line from Portage City, by the way of Ripon and Berlin and the southeasterly corner of Portage County, to Stevens Point; and there has been no location of any road upon that line.

Before the commencement of this suit, the railroad corporation entered upon the construction of the road from Stevens Point in the direction of Portage City; and as early as December 20, 1875, had completed all of the road and buildings described in the above proposition as necessary to be completed in order to entitle them to receive the bonds in controversy. Since December 20, 1875, the road has been in full operation from Stevens Point to Plainfield, a point beyond the southerly line of Portage County, and has since been opened and put in operation to Hancock, a distance of twenty-seven and a half miles; and the residue of the line to Portage City is under contract, the work being rapidly pressed and near full completion.

On February 17, 1874, the board of supervisors of the county of Portage voted that the chairman of said board have authority to demand the return of the bonds from the depositary, and to surrender and give up to be cancelled the shares certified and standing in the name of the county in the stock of the railroad; and notice accordingly was given on March 18, 1874, to the officers of the railroad, and also to the defendant bank. The plaintiffs, on September 17, 1875, demanded of the bank that the bonds should be delivered to them, which demand the officers of the bank refused to comply with, without the consent of the railroad company. The plaintiffs also offered to surrender to the railroad company all the shares in its capital stock standing in

the name of the county of Portage, as allotted to that county but this tender was refused.

As soon as authority was obtained from the Legislature for the proposed straightening of the line, the work of construction upon that line was begun, the line put under contract, and carried forward towards completion with all reasonable dispatch.

The railroad company has in good faith built and made ready for use the continuous railroad, and has also erected the buildings required by the terms of the proposition; and presented the bonds to the proper officers of said county for execution, and placed and deposited one thousand shares of the stock of said railroad company in the defendant bank to the credit of said county, and obtained the certificate of the chairman of the board of supervisors of said county that said road has been so constructed. The railroad company has relied upon the bonds in controversy as a part of its funds, and always has claimed and still claims and insists upon its right to hold and use the same to pay in part for the construction of its said railroad.

By the terms of the report, the Constitution and statutes of the State of Wisconsin, and the decisions of the Supreme Court, might be referred to as evidence of the law of that state. Certain maps were also referred to, showing the relative positions of the towns mentioned, of which the following is a sketch :

*S. J. Thomas,* for the plaintiffs, cited *Foster* v. *Kenosha,* 12 Wis. 616 ; *Fisk* v. *Kenosha,* 26 Wis. 23; *State* v. *Atwood,* 11 Wis. 422; *Seamans* v. *Carter,* 15 Wis. 548; *Veeder* v. *Lima,* 19 Wis. 280; *Whiting* v. *Sheboygan & Fond du Lac Railroad,* 25 Wis. 167 ; *Concord* v. *Portsmouth Savings Bank,* 92 U. S. 625; *Marsh* v. *Fulton,* 10 Wall. 676; *People* v. *Morgan,* 55 N. Y. 587 ; *Hopple* v. *Brown,* 13 Ohio St. 311.

*E. H. Abbot,* for the Wisconsin Central Railroad Company.

*H. W. Paine,* for the National Exchange Bank.

COLT, J.    The bonds of the county of Portage, in the State of Wisconsin, which were to be used in exchange for the stock of the Wisconsin Central Railroad Company, were placed with the defendant bank to be held and delivered to the railroad corporation upon the trusts and conditions contained in its written proposition to the county.

The plaintiffs seek that the trust so created may be decreed to be terminated, and the bonds delivered to them, on two grounds : first, that the bonds were illegally issued ; and, next, that the railroad corporation has failed to perform the conditions imposed upon it by the terms of the proposition.

1. It is contended that the two statutes of Wisconsin, under which the bonds were issued, are repugnant to that part of the Constitution of that state which in the following terms empowers the Legislature to provide for the " organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses." Const. of Wis. art. 11, § 3. The first of the statutes in question authorized certain counties, cities and villages, (including the county of Portage,) " through any portion of which any part " of certain railroads should run, " to aid in the location and construction of any portion of such road," and to that end to issue bonds in such sum " and upon such terms and conditions as shall be agreed upon " by the votes of a majority voting upon " a definite proposition in writing, signed by the president or secretary of said railroad company, and sealed with the common seal of said company," containing " a distinct statement of the amount of money or bonds desired, and the terms and conditions and considerations upon which the same will be required to be paid and delivered to said railroad

company." St. of Wis. 1869, *c.* 126. By the other statute the Wisconsin Central Railroad Company, which had acquired the property and franchises of the railroads named in the preceding act, also succeeded to the rights and privileges above granted. St. of Wis. 1871, *c.* 27.

It is contended that the constitutional provision, referred to, amounts by implication to a restriction upon legislative grants to raise money, where, by the terms of the grant, the amount is unlimited, applicable as well in grants of this description to counties as to incorporated cities and villages. But without considering whether the restrictions contained in the statutes in question would not properly meet all the requirements of the limitation referred to, it is sufficient to say that it is expressly confined to the chartered municipalities named, and does not include counties and other public corporations of a municipal character.

The Legislature of Wisconsin has power, by the Constitution, to confer upon the boards of supervisors of the several counties "such powers of a local, legislative, and administrative character, as they shall, from time to time, prescribe." Const. of Wis. art. 4, § 22. And by the general laws each county is made "a body politic and corporate, and as such shall be empowered" "to make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate or administrative powers," and "to exercise such further powers as shall be specially conferred by law." 1 Taylor's Sts. of Wis. *c.* 13, § 2. It is settled by the Supreme Court of Wisconsin, that counties may subscribe for the stock of a railroad, and issue bonds therefor, when the power has been expressly conferred. *Clark* v. *Janesville,* 10 Wis. 136. *Bushnell* v. *Beloit,* 10 Wis. 195. *Phillips* v. *Albany,* 28 Wis. 340. *Lawson* v. *Milwaukee & Northern Railway,* 30 Wis. 597. *Rogan* v. *Watertown,* 30 Wis. 259. The Supreme Court of the United States has affirmed the validity, under the state Constitution, of county orders issued under a law of Wisconsin by a county in that state; *Olcott* v. *Supervisors,* 16 Wall. 678; and has in many cases recognized the validity of debts contracted by counties in aid of railroad construction. *Knox County* v. *Aspinwall,* 21 How. 539. *Moran* v. *Miami County,* 2 Black, 722. *Mercer*

*County* v. *Hacket*, 1 Wall. 83.    *Rogers* v. *Burlington*, 3 Wall. 654, 663.    *Railroad Co.* v. *Otoe County*, 16 Wall. 667.   In view of these decisions and statutory provisions, we are satisfied there was no violation of any constitutional limitation in the laws, under the authority of which the bonds in controversy were issued.

2. It is further objected by the plaintiffs that the acceptance of the proposition of the railroad corporation, and the delivery of the bonds to the bank, did not make a valid legal contract between the parties, because, when the proposition was made and voted on, the specified line of road, in payment for the stock of which these bonds were to be issued, was not located or authorized by any charter.

The line specified was a line running southerly from Stevens Point, through certain towns named, to the south line of Portage County, in the direction of Portage City, in the county of Columbia.   At the time when the proposition was made, the Wisconsin Central Railroad Company had chartered authority to build a road to Portage City, lying seventy-six miles south of Stevens Point, only by a circuitous route of one hundred and fourteen miles, through Berlin and Ripon.   It was to be inferred from the terms of the proposition, that the railroad intended to obtain future authority to build on the most direct and feasible route between the terminal points named, instead of going around through the places last named.   Such authority was afterwards .obtained, but, until it was obtained, the corporation might lawfully make a location under existing powers upon the Berlin and Ripon line, which could also be availed of for the direct line when chartered, provided such location would be a reasonable one under the charters for each line.   There is nothing in the facts presented, or in the maps and plans submitted, which would justify the court in declaring, as matter of law, that the line between Stevens Point and the south line of the county was not .egally authorized and located under a charter existing at the time the proposition was made, or did not become a part of the direct line when that was subsequently authorized.

But, whether this is so or not, still the fact that there was no location then made or authorized, cannot now be permitted to defeat the right of the railroad to the bonds.   The Wisconsin

Central Railroad Company was a corporation then legally organized under its charter, with many miles of road constructed and in operation in other directions. It was the purpose of the corporation to improve this part of its line, if sufficiently encouraged by the towns interested. And the whole binding force of the transaction, the validity and future delivery of both the bonds and the stock, were made to depend upon the future construction of the road upon the line indicated, to be certified to the defendant bank by an officer of the county or the secretary of state. There is nothing from which it can be inferred that the road was to be built without proper authority first obtained, and, upon its completion by the Wisconsin Central Railroad Company, a valid legal consideration arose to support the contract for the delivery of the securities deposited.

There is nothing in the contract showing illegality, or that it was to be performed in violation or in excess of the chartered rights of the railroad corporation. The arrangement was preliminary and conditional, to become binding on the county only upon a legal performance of its terms by the railroad. Such contracts, made with a view to ascertain the resources which may be safely relied on in the construction of public works, have been declared by this court to be well calculated to prevent mistakes and to secure the rights of all parties. *Western Railroad* v. *Babcock*, 6 Met. 346, 354. And in a recent case it was held by the House of Lords to be not beyond the corporate power of a railway company, wishing to alter one of its branches, and being about to apply to Parliament for authority so to do, to enter into a contract for the purchase of lands required for the road if it should obtain the act. *Scottish North Eastern Railway* v. *Stewart*, 3 Macq. 382, 416. See also *Mayor, &c. of Norwich* v. *Norfolk Railway*, 4 El. & Bl. 397; *Racine County Bank* v. *Ayers*, 12 Wis. 512; *Lawson* v. *Milwaukee & Northern Railway*, above cited.

3. The form of the proposition is said to be illegal, because it was signed by the vice-president, instead of the president or secretary of the corporation. But this is mere matter of form which, if not cured by the acceptance of the proposition, is disposed of by the provision of the St. of Wis. of 1873, *c*. 289, § 2, which cures all defects or irregularities in any proceedings, pre-

liminary to the vote granting aid where the railroad corporation, relying upon such aid, shall have performed its agreement in good faith. The case finds everything to have been done which makes this act effectual to cure the illegality, if any, in the signature of the vice-president. *St. Joseph Township* v. *Rogers,* 16 Wall. 644, 665.

4. Nor does the proposition fail in definite and distinct statement of "the terms, condition and considerations" upon which the proposed aid should be furnished. It defines the route through Portage County with precision ; it states the amount of bonds required of the county, and sets forth the terms of their delivery. The only point, in which it can be claimed that it is indefinite, is in failing to fix the time in which the whole subscription required to build the whole line to Portage City should be obtained from the other municipalities to whom application was to be made, and in not limiting the time in which legislative authority for the entire direct line should be procured. But the answer to this is, that in both these matters the proposition is as definite as to time as the nature of the facts permitted either party to make it, and is made definite in law by the rule that when an act is agreed to be done, and no time is fixed, the law will require it to be done in a reasonable time, with due reference to the circumstances and the nature of the act.

If, as the defendants contend, the railroad corporation, by the true construction of the proposition, was allowed six months, after the entire subscription of $400,000 was made, to begin the work, and two years after that time to finish it, it cannot be truly said that it is indefinite, merely because the time of performance depends on a contingent event which both parties contemplate and provide for by apt stipulations. And if, as the plaintiff contends, the corporation was required to build the road in two years from the deposit of these county bonds, then plainly the proposition cannot be said to lack certainty in this respect.

5. The plaintiffs claim the right to reclaim the bonds, because no road has been built from Stevens Point to Portage City, or to some road connecting therewith within two years from the deposit of the bonds of Portage County with the defendant bank. This depends upon the construction of the contract fixing the time when the two years shall begin to run. The sub

stance of the proposition was that the county should give its bonds to a certain amount, and take stock in exchange. The bonds were to be immediately delivered to the defendant bank, in trust for the railroad corporation, to be delivered to the latter whenever a continuous road between the points stated in the county of Portage should be built. To this was added a condition, to the effect that the railroad corporation should not be bound to build any portion of the road between the points named upon the contemplated direct route, unless the municipal corporations on the line of the road should agree to make a similar exchange of bonds for stock to the amount of four hundred thousand dollars, with a proviso that, if the road should not be commenced within six months after said amount in bonds should have been deposited in the defendant bank, or should not be built within two years from the deposit of such bonds with the bank, the county authorities of Portage County might withdraw said bonds and surrender its stock, meaning, of course, the bonds deposited by them only.

This condition, upon which the obligation to build that part of the road in Portage County was made to depend, was a condition inserted solely for the benefit of the railroad company. It was solely in its option to refuse to build any part, if the entire subscription and the amended charter were not obtained. But it fixes an uncertain event as the time from which, at the end of two years, the bonds of the county might be reclaimed. It appears that the bonds were deposited in the bank in February, 1872. In February, 1875, the railroad corporation was authorized to locate and construct its line in the most direct and feasible route between the terminal points named; and in March following this change was approved by the Congress of the United States, with reference to certain land grant rights. It was proved at the hearing before a single judge, that, as soon as this authority was obtained, the work of construction upon the direct line was begun and carried forward towards completion with all reasonable dispatch; and that, although only $84,500 was ever obtained in aid of the railroad upon similar propositions submitted to other municipal corporations. In September, 1875, the plaintiffs demanded the bonds of the bank, and offered to surrender the stock to which they were entitled; and

upon the refusal of the bank, the bill in this case was filed. Before this, however, and as soon as authorized by an amendment of its charter, the railroad corporation had entered upon the construction of the line, and, as early as December of that year, had completed all that part which, by the terms of the proposition, entitled it to the bonds. This was within the limit of time agreed upon, for it was within two years from the time the charter was amended; and the other contingency, arising when the entire subscription should be filled, has not yet arisen. The railroad company had an option to build this part and take these bonds, although the provisions looking to the completion of the whole line were not complied with.

6. Finally, it is strenuously urged that, by the rule of construction above stated, the parties must have contemplated that the contingencies upon which the time would begin to run would happen within a reasonable time; and that, allowing for such reasonable time, more than two years beyond that had elapsed when this bill was brought. But it is plain that the contingencies contemplated depended largely upon the efforts of the railroad corporation and the friends of the line, involving discussion with many different parties, application for legislative authority, with time to reconcile adverse interests and to enlist support. The burden is on the plaintiffs to show that the time has elapsed which entitles them to the possession of these bonds. Upon the facts here disclosed, we cannot say as matter of law that the reasonable time which must be allowed to the railroad company in determining that question, with two years added, had passed, when the plaintiffs asserted their rights to the bonds.

It was found at the hearing that the railroad company had in good faith built the continuous line required from Stevens Point to the south line of the county, had erected the buildings and deposited the shares of stock, and had obtained a certificate to that effect from the chairman of the board of supervisors of the county, as required by the terms of the proposition, to entitle it to the possession of these securities. And, upon the whole case, the plaintiffs fail to establish a right to withdraw the bonds from the trustee, upon a surrender of their right to the railroad stock. *Bill dismissed, with costs.*