PHILLIPS and others vs. THE TOWN OF ALBANY and others.

TOWN SUBSCRIPTION TO STOCK OF RAILROAD.   (1–10) *Railroad subscription by town, as in pursuance of ch. 273, P. and L. Laws of 1870: Various objections to its validity considered.*   (11) *Power of Legislature to authorize such subscriptions.*

1. The court cannot take judicial notice that a railroad company, in locating its road between two given points, will not run the same to or near certain other places from which it receives subscriptions of stock.

2. The objection that the stock subscriptions of certain towns are or will be invalid because those towns are not on the line of the road, cannot be urged in behalf of an injunction restraining a defendant town from subscribing for stock, where such town is itself on the line of said road.

3. If the contract of subscription of the defendant town is by its terms made contingent upon like subscriptions being made by other towns,

Phillips and others vs. The Town of Albany and others.

the fact that such other towns cannot legally subscribe will invalidate the defendant's subscription, and is no ground for equitable interference to prevent the issue of bonds which it does not appear are designed to be issued except in strict accordance with the terms of such subscription.

4. Under ch. 273, P. & L. Laws of 1870, there can be no valid stock subscription by a town to the railroad company therein named, until *after* a vote of the electors in favor thereof.

5. Where by the terms of its charter a corporation has forfeited its franchises by non-user, but such forfeiture has never been judicially declared, an act of the legislature reviving and continuing in force the charter, without any specific provision either recognizing as officers of the company the persons last elected as such or directing a new organization, must be held to continue the organization as it existed *de facto* at the time of the passage of such act.

6. A provision in said ch. 273, for taking the vote of a town in reference to subscribing for the stock of a railroad " at an annual or special election," construed to apply to a vote taken by ballot, at a " town meeting."

7. It was proper to keep the polls open at such an election until sundown, according to the general statutory rule for elections, instead of closing them at 5 P. M., the hour prescribed for closing the polls at a town meeting.

8. Where the statute requires the town clerk or supervisors to post notices, those officers need not post them in person, but may employ other persons to do so.

9. Ch. 273, P. & L. Laws of 1870, entitled " An act to revive and amend the act to incorporate the Sugar River Valley R. R. Co., approved March 29, 1855, and to authorize certain towns therein named to aid in the construction of said railroad," is not open to objection (under sec. 18, art. IV. of the state constitution) on the ground that it embraces more than one subject, or that the subject is not expressed in the title.

10. Said ch. 273 is not affected or governed by ch. 24, General Laws of 1870, previously passed, being full and complete in itself, and in some respects inconsistent with said ch. 24.

11. The power of the legislature to authorize municipal subscriptions to the stock of railroads is settled by former decisions in this state, as well as in other states, though the majority of this court would be disposed to deny the power, if it were a new question.

APPEAL from the Circuit Court for *Green* County.

Chapter 299, P. and L. Laws of 1855, incorporates certain persons therein named, and their successors and associates, as the "Sugar River Valley Railroad Company;" provides that the affairs of the company shall be managed by a board of nine directors, and that the persons specifically named as corporators shall constitute the board of directors until other directors shall be elected by the stockholders; and provides also for annual meetings of the stockholders to elect directors and for other purposes, and that until the election in any year shall be had, the directors of the preceding year shall continue to act. It then empowers the company to locate and construct a railroad from some point (to be determined by the directors) in Green county in this state, on the north side of the line of the Southern Wisconsin Railroad, or of the Milwaukee and Mississippi Railroad as extended westerly from Janesville to the Mississippi, "thence up the valley of the Sugar river to Albany, in the county of Green, thence by way of Attica and Dayton;" and it confers upon the company in respect to said road the powers usually conferred in this state upon railroad companies. Section 17 of said act, as amended by chapter 38, P. and L. Laws of 1858, declares: " All the privileges and immunities granted by this act shall cease and terminate at the expiration of eight years from the passage of this act, unless said company shall have ten miles of said road in actual operation."

An act approved and published in March, 1870, and afterwards published as chapter 273, P. and L. Laws of 1870, is as follows:

" AN ACT to revive and amend the act to incorporate the Sugar River Valley Railroad, approved March 29, 1855, and to authorize certain towns therein named to aid in the construction of said railroad.

" *The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

" Section 1.    The act entitled an act to incorporate the Sugar

River Valley Railroad Company, approved March 29, 1855, and the acts amendatory thereof, are hereby revived and continued in full force and effect as hereinafter amended, as far as they relate to that portion said road authorized to be constructed from the state line between this state and the state of Illinois, to the city of Madison, by chapter 299, section 8, private and local laws of 1855. Said railroad shall run from Dayton, Green county, by or near Belleville, Paoli and Badger Mills, to the city of Madison, Dane county.

"Section 2. The city and town of Madison, the towns of Fitchburg, Verona, Springdale, Montrose and Primrose, in the county of Dane, and Brooklyn, Exeter, New Glarus, York, Mt. Pleasant, Albany, Decatur, Sylvester, Spring Grove, and Jefferson, in the county of Green, and the towns of Spring Valley and Avon, in the county of Rock, may severally by their respective boards of supervisors, subscribe for and take stock in said Sugar River Valley Railroad Company, to an amount not exceeding fifty thousand dollars for each of said towns; and in payment of such stock, the supervisors of each of said towns may issue the bonds of said towns for the amount so subscribed, drawing ten per cent. interest per annum, payable at such time and place as may be agreed upon.

"Section 3. Such bonds shall not be executed on the part of any town by the supervisors thereof, until the majority of the votes cast at an election in said town shall have been given in favor of issuing the same.

"Section 4. Said towns shall have the power to vote upon the issuing of such bonds at any annual election, or at any special election called for that purpose, as provided in this act.

"Section 5. If the vote for such bonds shall be taken at any annual election, notice of said vote shall be given by posting notices thereof in five public places in such towns for at least ten days previous to such election. It shall be the duty of the town clerk or two members of the town board of supervisors of such towns to give and post such notices when re-

quired as herein provided. Said notices shall contain the fact that such vote is to be taken, the time and place of such election, and the amount proposed to be raised by such vote, the conditions upon which such bonds shall be issued, and the manner of their payment.

"Section 6. A special election may be called to vote said bonds, ten freeholders, voters and residents of the town where such election is to be held, signing a petition requesting such election to be held, and presenting the same to the clerk, or two of the members of the town board of supervisors, whose duty it shall be to immediately thereafter give the required notice for such election as provided in the fifth section of this act.

"Section 7. When such vote is taken, whether at any annual election or at a special election called and held for that purpose, it shall be conducted in the usual form of conducting elections as prescribed by law. In voting, the electors shall vote by ballot, on which shall be written or printed, "for bonds to railroad," or "against bonds to railroad." If the vote is taken at the annual election, then the ballot shall be deposited in a separate box which shall be provided by the judges of election for that purpose; but if the vote is taken at a special election, then the polls shall be opened, a poll list shall be kept, the votes counted and returns made, as the law provides; and at the same time the electors of said town so voting upon the issuing of bonds to said company, may choose three qualified electors to represent the town in any meeting of stockholders of said company, and cast for such town the votes to which the same may be entitled. One of said directors so elected shall hold for three years; one for two years, and one for one year, the ballots to designate the term of the person whose name is thereon; there shall thereafter, at the annual election in said town, be elected a director for the term of three years.

"Section 8. Each of said towns may at its annual or special town meeting, vote money not exceeding one thousand

dollars, to be paid out under the direction of such supervisors, for surveying, procuring right of way, payments for services of the officers and employees and any and all other incidental and preliminary expenses.

" Section 9. This act shall take effect and be in force from and after its passage."

This action was brought in April, 1870, by *Israel Phillips*, *John Broughton* and six others, tax-payers of the town of Albany in said county, in their own behalf and in behalf of the other tax-payers of said town, against the town and the board of supervisors thereof, to restrain the defendants, etc., " from subscribing for and taking stock in said Sugar River Valley Railroad Company, on behalf said town, and from making, issuing, signing or delivering the bonds of the town to said company, under the aforesaid act, and to have said act, and all proceedings taken under it, adjudged null and void." The complaint alleges, *inter alia*, that no portion of the road of said company has ever been in actual operation, and that no track was ever laid by it; that the company has no legal board of directors, and no legally constituted officers, but " is being run by a few individuals, who claim some authority ; " that so far as the interest of its citizens are concerned, said town of Albany is already sufficiently provided with railroad accommodation, and the road in question is not needed ; and that, in the opinion of the plaintiffs, said road will not be built for many years to come, if ever, and if said subscription is suffered to be made, the sum will be frittered away and stolen by a few individuals, etc. It is further alleged that " on the 5th of April, 1870, being annual town meeting day, and without any subscription for said stock on behalf of said town having been first made, a pretended vote was taken in said town," under the provisions of said ch. 273, relating to town subscriptions to said railroad company, " and it is claimed by the defendants that the majority of the votes then cast were in favor of issuing the bonds of said town to the amount of

$35,000 in payment of a subscription of said town to the stock of said pretended company for a like sum; " but that said vote, at a town meeting, which is the only one taken in said town upon the subject, "was wholly irregular, unauthorized and void," as plaintiffs are advised and believe. There is further a denial, upon information and belief, that notice of said election was given as required by the act, and an allegation that the vote was not taken in the usual manner of conducting elections, as required by said act; that the polls at said town meeting were not opened until between the hours of 9 and 10 o'clock in the forenoon, and were closed at 5 o'clock in the afternoon of that day; and further, upon information and belief, that in other respects the election was not held, the votes counted, and the returns made, according to law. It is alleged, however, that it is now claimed by the defendants that said vote was regular, and that they are authorized thereby to make and issue the bonds of the town to the amount of $35,000, payable to said company as may be agreed upon, drawing ten per cent. interest per annum, in payment of a like amount of its certificates of stock; and that it is the intention of the supervisors to issue said bonds within the next twenty days, unless restrained therefrom. It is then alleged, in substance, that shares in the capital stock of said company have no value, and will not have any value, and that the town and tax-payers will not receive any consideration for said subscription and bonds; that said ch. 273, or so much thereof as relates to town subscriptions for capital stock of the company, is void by sec. 8, art. VIII. of the state constitution, because three-fifths of the members were not present in either the assembly or senate when said act was passed, and because the yeas and nays were not taken upon the passage of the bill, and entered upon the journals of the two houses; that the act is also void by sec. 18, art. IV. of the constitution, because, being a local act, it embraces more than one subject. Prayer, for an injunction as above stated.

Upon this complaint the court made an injunctional order restraining generally the supervisors of said town of Albany and their successors in office from subscribing for or taking stock in said railroad company, for or in behalf of said town.

The answer avers, *inter alia*, that certain persons therein named are respectively the president, vice-president, secretary, treasurer and·directors of said railroad company, and have been acting in their respective official capacities as officers of said corporation, conducting the business, for more than five years last past, and were so acting when said ch. 273, P. and L. Laws of 1870, was enacted and took effect, and have continued so to act ever since; that said directors were duly elected by the stockholders of the company, and the other officers by the directors; that ever since March 15th, 1856, said corporation has in fact and of right existed and continued to act and do business, and to exercise the corporate powers and franchises conferred by the several acts of the legislature above mentioned. The answer further sets out a certain "proposition for aid" signed by the vice-president and secretary of said company, which is hereinafter recited, and alleges that this proposition was received by the supervisors of said town about March 25, 1870, and that they agreed to subscribe to the capital stock of the company, as proposed, and to issue the bonds of the town payable according to the terms and conditions of said proposition, if the town should vote its assent thereto as provided in said act; that they "gave and caused to be posted" in seven public places in said town, at least ten days previous to said annual election, a notice, to each copy of which, so posted, was attached a copy of the "proposition" aforesaid—the notice stating that at said election the question of issuing such bonds in pursuance of the act aforesaid and *upon the terms and conditions mentioned in said proposition*, would be submitted. The answer further avers that "by the aforesaid agreement between said railroad company and the town of Albany, it is provided and agreed that no bonds shall be issued by or on behalf of said town of Albany

and delivered to said company, until the towns on or near the line of said road of said company from Madison to the south line of the state (meaning the towns in said section two named and specified) shall have voted in favor of issuing bonds in aid of said railroad to the amount of $300,000 in the aggregate;" and defendants "do not intend to issue or deliver, nor will any bonds of said town of Albany be issued or delivered by them under the agreement or vote aforesaid, until said agreement and said condition thereof last aforesaid is fully and fairly complied with; and that all pretenses in said complaint that any bond or bonds will or would be issued under the next twenty days, or in any other event than the one above specified, are utterly untrue and destitute of any foundation whatever, and there is not now, nor has there ever been, any design or intimation on the part of these defendants, in relation to the issuing or delivering of said bonds, other than that above set forth." The answer further avers that the proceedings at said election were regular, and that the road in question "as located through said town of Albany," will be of great benefit to the town; and it denies that three-fifths of the members of each house of the legislature were not present when ch. 273 aforesaid was passed.

The "proposition for aid" above referred to was as follows:

"For the purpose of providing means to complete the grading, bridging, purchasing ties, and otherwise completing the superstructure of their road, the Sugar River Valley Railroad Company propose to issue in exchange, thirty-five thousand.(35,000) dollars of the capital stock of said company, for a like amount of the bonds of the town of Albany. Said bonds to be issued with annual interest coupons attached, and bearing interest at the rate of ten per cent. per annum, the whole amount to become due and payable as follows, to-wit: ten per cent. cash thereof, on the 1st day of January, A. D. 1871, and ten per cent. thereof on the first day of January in each and every year thereafter, until the whole sum shall have been paid. Provided, however, that said town is to have the

right to pay the whole amount of said bonds remaining unpaid, at any time after the expiration of five years from the first day of January, A. D. 1870; and provided further, that after the issue of the said bonds shall have been authorized pursuant to chapter 273 of the local laws of 1870, approved March 12th, 1870, one-sixth part of said bonds only shall be issued and delivered to said company in advance of the work of grading the line of said road through said town, and that thereafter an equal proportion of said bonds shall be issued for every mile of road graded, so fast as the said grading shall progress in said town; and provided further, that no bonds shall be issued and delivered to said company until the towns on or near the line of said road from Madison to the south line of the state, shall have voted in favor of issuing bonds therefor, to the amount of three hundred thousand dollars in the aggregate, and no greater amount in the aggregate shall be issued than may be necessary to grade and tie the road, build the bridges, and prepare the bed for the iron between Madison and the state line."

Upon the answer and certain affidavits tending to prove the facts therein alleged, the defendants moved to dissolve the injunctional order. The court made an order denying the motion to dissolve, but modifying the former order so that it should merely restrain the defendants from making and issuing bonds "under the proceedings which have already been had" by the board of supervisors of said town and the electors thereof. The plaintiffs appealed from so much of said order as modifies the former order; and the defendants appealed from that part of it which denies their motion.

*John Winans* and *John R. Bennett*, for plaintiffs, argued that a subscription and issue of bonds by a municipal corporation to aid in the construction of a railroad, to be valid, must at least be in strict compliance with the law authorizing them, and the law must be strictly construed (*Veeder v. Town of Lima*, 19 Wis., 280; 17 id., 442; 18 id., 411); that ch. 273, P. and L.

Laws of 1870, is invalid because it does not require as a condition to a subscription on the part of any of the towns therein mentioned, that the road shall run *to, near* or *through* such town (10 Wis., 195; *Hasbrouck v. Milwaukee*, 13 id., 43, 44; 3 Wallace, 654; *Talbot v. Dent*, 9 B. Mon., 526; 13 Mo., 415; Cooley's Const. Lim., 214); that the rights and franchises granted to the "Sugar River Valley Railroad Company" had ceased to exist by the expiration of the time limited by the acts of 1855 and 1858; that the act of 1870 'only revives the original and amendatory acts, but does not revive and reinstate the old board of directors and officers, and the transaction here in question is an attempt to enter into a contract with something or somebody that has no existence (*Bank of Galliopolis v. Trimble*, 6 B. Mon., 599; *Crocker v. Crane*, 21 Wend., 211; 19 Ohio, 463; 41 Pa. St., 278; 18 Ind., 86; 34 N. H., 156, 157); that the vote upon the subject of issuing bonds, under the act, can be taken only at an "annual or special *election*" held in the town, and not a "town meeting" (R. S., ch. 7, pp. 99, 100, and ch. 15, sec. 6; *Hoxey v. Ch. & Rock River R. R. Co.*, tried in De Kalb Co., Ill., and unreported); that at an "election" the polls are to be opened at 9 A. M., and closed at sundown (R. S., ch. 7, sec. 26), and at a "town meeting" they are to be opened between 9 and 10, A. M., and closed at 5 P. M. (R. S., ch. 15, sec. 26); and that the act in question itself (sec. 8) discriminates between an election and a town meeting; that the vote in this case, if it could be taken at a town meeting, was void because the polls were kept open and votes received after 5 P. M., and until sundown; that the notices required by the act were not posted by the clerk or supervisors (sec. 5); that the act embraces more than one subject, and the title is defective in not localizing the bill (Const., art. IV., sec. 18; *Durkee v. City of Janesville*, 26 Wis., 697; 14 Me., 524); that the line of the road must be located, and the record or survey thereof filed in the register's office for Green county, before aid can be given (Laws of 1870, ch. 24; 11 Ohio St., 183); that the considera-

tion for a stock subscription by a town must be found in the value of the stock, and not in any supposed benefit to be derived from the building of the road (*Whiting v. R. R. Co.*, 25 Wis., 167), and want of consideration is available in such a case as this. 21 Wend., 311; 57 Barb., 320.

*H. Medberry* (with *S. U. Pinney*, of counsel), for the defendants, argued: 1. That where there has been a user of corporate franchises by an association of persons, their existence as a corporation can be inquired into only by the government (A. & A. on Corp., § 94, and cases there cited); that there may be a *de facto* corporation having *de facto* officers, by whose acts it will be bound (*Mills v. Gleason*, 11 Wis., 470; A. & A. on Corp., § 287); and that after the corporation here was revived, the alleged forfeiture waived, and the corporate existence continued, the same persons continued to act as its officers, and were officers *de facto*, by whose acts the company would be bound. *Buffalo & A. R. R. Co. v. Cary*, 26 N. Y., 75; *Boston Glass Man. Co. v. Langdon*, 24 Pick., 49; *Comm. v. Union Ins. Co*, 5 Mass., 232; A. & A. on Corp., § 777, and cases cited. 2. That the election was regular and valid under the act, and even if there was some irregularity in opening or closing the polls, it will not vitiate the result since it is not pretended that there was not a large majority of the legal voters of the town in favor of the proposed subscription. *People v. Cook*, 4 Seld., 67; *State ex rel. Bancroft v. Stumpf*, 21 Wis., 579. 3. That an agreement to subscribe to the capital stock of a corporation, such as is stated in the answer, is a valid agreement, and made upon a sufficient consideration (*Rhey v. Plank Road Co.*, 27 Pa. St., 261; *Cumberland Valley R. R. Co. v. Baab*, 9 Watts, 458); and such an agreement amounts to a conditional subscription, and is according to the manifest meaning and intent of the act, and is, therefore, valid, though conditional. *Mil. & N. I. R. R. Co. v. Field*, 12 Wis., 340; *Racine Co. Bank v. Ayers*, id., 512. 4. As to the constitutional objections urged against the act of 1870 counsel contended: (1.) That sec. 8, art. VIII. of the constitution

refers to a state tax only. *Watertown v. Cady*, 20 Wis., 501.
(2.) That the allegation that there was not a quorum of either
house present when the act was passed, does not tender a mate-
rial issue. The question whether a certain act was passed, is to
be determined by reference to the journals; and it is not pre-
tended that they show that the act was not properly passed. (3.)
That the act was not void under sec. 18, art. IV. of the constitu-
tion as embracing more than one subject, or as not sufficiently
stating the subject in the title. *Conner v. The Mayor*, etc., 5
N. Y., 285; *People v. McCann*, 16 id., 58; *Supervisors v. People*,
25 Ill., 181; *Brandon v. The State*, 16 Ind., 197; *State v. Bow-
ers*, 14 id., 198; Cooley on Cons. Lim., 146, and cases there
cited.

DIXON, C. J. We do not think any of the objections or
positions taken by the plaintiffs can be sustained.

1. It is not perceived how the plaintiffs can make or main-
tain the objection that the law or the stock subscriptions under
it are invalid because it does not appear that the railroad is to
run to or near, or pass through, any of the towns authorized to
aid in its construction. As a matter of fact it appears from
the complaint of the plaintiffs themselves, that the proposed
road is to run through the town where they reside and in which
they are tax-payers, viz., the town of Albany, defendant, whose
proceedings, or the proceedings of whose officers and voters,
the plaintiffs seek by this action to restrain. So far as the
town of Albany, the plaintiffs' own town and the only one in
which they are interested as tax-payers, is concerned, this objec-
tion is without foundation. But it may be said, as, by the
proposition of the railroad company and the agreement there-
upon entered into by and between the company and the offi-
cers and voters or inhabitants of the town, the subscription of
the town is made dependent or contingent upon like subscrip-
tions being made by all the other towns mentioned in the act,
that the power or ability of all such other towns to subscribe

Phillips and others vs. The Town of Albany and others.

for stock, and the validity of their subscriptions when made, are involved and must be determined in this proceeding. A ready answer to this is, that if the subscription of any other town should fail or turn out to be invalid on the ground suggested or any other, the town of Albany, by the very terms of its agreement, is absolved from all obligation to receive the stock or deliver its bonds. The answer avers, and it is duly verified by the chairman of the town supervisors, and the case furnishes not the slightest proof to the contrary, that the supervisors have not proposed or intended, and do not propose or intend, to execute or deliver the bonds upon any other terms or conditions, or in any other way or manner, than as specified in the proposition and agreement entered into with the railroad company. But more than this, the complaint in this case states no facts showing or tending to show that the road is not to run to, near, or through all of the towns mentioned in the act. We cannot, as we understand it, take judicial notice of such matters, or act upon any knowledge of the geography of the state, and what we might suppose the railroad company or its engineers would do in locating the road between the points named in the charter. These are facts which it is incumbent on the plaintiffs to aver and prove, if they would take advantage of them for the purpose of having the subscription declared invalid. In passing we desire to observe of the subscription, or of the agreement entered into between the officers and people of the town and the railroad company, that we regard it as most wise and judicious on the part of the supervisors, and one well calculated to guard and protect the rights and interests of the inhabitants and tax-payers of the town. If the proceeding here was to restrain the officers or authorities of the town from violating the terms of the agreement, or executing and delivering the bonds contrary to its provisions, and that fact were shown, we should have little difficulty in upholding the injunction.

2. It is said the subscription must precede the vote of the electors on the issue of the bonds. This objection depends

upon the proper construction of sections two and three of chapter 273, Private and Local Laws of 1870. A most nice and literal construction of those sections might, perhaps, sustain the objection. *Qui hæret in litera hæret in cortice.* The law respects the effect and substance of the matter, and not every nicety of form and circumstance. The statute contains no words expressly declaring such intent, or from which it results by necessary implication. It is a matter of the merest inference, drawn from the order in which the provisions occur. Transpose them, so that the provision for the vote would come before that for the subscription, and there would be no ground at all for saying that the subscription must actually be made first. The subscription without the vote is a mere nullity. It is plain that the legislature never intended that there should be a valid subscription without the vote in favor of it; and it seems to·be trifling almost with the effect and substance of the statute, to stand upon a point or objection like this. It is untenable, and must be overruled.

3. It is insisted that as the rights and franchises of the railroad company had lapsed before the passage of the act above referred to, the first section of which revives and continues in force and effect the original act of incorporation, and the acts amendatory thereof, the persons assuming to be and to act as the board of directors and officers of the company, and to represent it, are not authorized so to do, and the company is without organization, directors, or officers, so that no contract can be made with it. The act does not revive or continue the board of directors or officers, or declare that the persons then or last holdin̸ elected shall be deemed to be the board of directors and cers, nor provide for any new organization. At the time of passage of the act, no judgment or decree of forfeiture, or the company had lost its corporate powers and franchises been rendered; and at that time an organization or corporation *de facto* at least existed, with a board of directors and officers claiming to act for and represent it. This was sufficient to give

full and immediate effect to the act of revival. The act must be presumed to have been, and doubtless was, passed at the instance of the *de facto* corporation, or of the officers and persons representing it, and was intended to restore or give to that corporation all its former legal rights and franchises. The legislature took hold of the then existing corporation, such as it was, and declared it to have all the powers and privileges which it ever had, and hence no provision for any new or further organization.

4. It is said that the act provides for the vote to be taken at an "annual or special election," and that the vote was taken at a "town meeting." It is urged that the statutes make a distinction between an election and a town meeting; that they do not open and close at the same hour; and that such distinction was intended to be kept up and observed under the act. No reason is apparent, and none has been suggested, why a distinction should have been made in a case of this kind, or why the legislature should have provided for a submission at any special or annual election, and yet have refused to submit at a town meeting. We all know, as matter of experience, that voters are quite as likely to attend town meetings, where important business of the town is almost always to be transacted, as to attend general elections, except it be on some occasion of more than ordinary interest; and that there is greater probability of full attendance at a town meeting than at any special election. No reason or motive is perceived for the distinction, or why it should have been intended. Did the legislature so intend? A town meeting is an election, within the general meaning of that word. Every lawful assemblage of voters for the purpose of making choice or determining by vote or ballot, is an election. Did the legislature use the word election, in the act, intending it to apply and be understood according to its general signification; or was it used in the more restricted sense in which it sometimes occurs in the statutes? We think the

more general sense of the word corresponds most fully with what must have been the intention of the legislature.

5. The fifth objection is, that the vote was void, because, being taken at a town meeting, the polls were not closed at 5 o'clock P. M., but were kept open until sundown, and votes delivered thereon until that time. This objection is answered by our remarks upon that last considered. It was proper in the vote upon the subscription to keep the polls open until sundown. That is the usual, or one of the usual forms of conducting elections, which the act prescribes shall be followed.

6. Another objection is, that the notices required by the act to be posted ten days before the election, were not posted by the town clerk or supervisors of the town in person. Those officers did not post up the notices with their own hands, but employed other persons to do so. We can hardly believe that this objection is seriously taken, but if it is, it is as seriously overruled.

7. It is further objected that the act embraces more than one subject, and also that its title is defective in not localizing the bill. Constitution, art. IV., sec. 18. The act embraces no more than one subject, and that is, building the line of the railroad named in it, or creating a corporation for that purpose and providing how it may obtain means and facilities for accomplishing it. It is all the same general subject, which is all the constitution means. An act might be passed creating or chartering a company in full, and providing for municipal subscriptions to its stock with all their details and particulars, and yet not be obnoxious to constitutional objection on this ground. And we think there is nothing in the other part of the objection, that the bill is not properly localized in the title. The act in this respect differs altogether from that under consideration in *Durkee v. Janesville*, 26 Wis., 697, cited and relied upon.

8. It still further might be urged, that no vote can be taken or subscription made until the road is located, and the record or survey thereof filed in the office of the register of deeds for

Phillips and others vs. The Town of Albany and others.

Green county, as provided by chapter 24, General Laws of 1870. The act under consideration was passed and approved after chapter 24 became a law. It is full and complete in its provisions, makes no reference to that chapter, and is not affected or governed by it. It is in fact inconsistent with it.

9. The ninth and last point, in substance, is, that municipal subscriptions for railroad stock, and taxation to pay the same, cannot be constitutionally authorized. However we might feel bound to regard this question, or to hold upon it, were it a new one, we are now effectually precluded from any examination of it, and such subscriptions must stand so long as the legislature sees fit to authorize them and the towns or municipalities to make them, or until the people deem it expedient to change the constitution in this particular. Enough was said in *Whitney v. The Sheboygan and Fond du Lac Railroad Company and others*, 25 Wis., pp. 186, 187, 209 and 210, to indicate the distinction — all that there is — between a stock subscription and a donation or other appropriation of public moneys for the use and benefit of those private railroad corporations, and also to indicate that, but for past decisions holding valid the subscription and taxation to pay it, to which decisions we were required to adhere, the majority of this court would not hesitate to declare the subscription likewise void, and the tax to pay it wholly unauthorized. We were constrained to this conclusion then, and have not changed our views now. But the validity of such subscriptions had been so often held both in this state and elsewhere, and such vast pecuniary interests had become involved and were dependent on the decisions upholding them, that we thought then, and think now, no stronger case for the application of the doctrine of *stare decisis* could be presented. It is upon this ground, and this alone, that we sustain the present subscription.

*By the Court.*— That part of the order appealed from by the plaintiffs is affirmed, and that part appealed from by the defendants is reversed, with costs on both appeals to be taxed against the plaintiffs.

LYON, J., took no part.