## ROGAN vs. THE CITY OF WATERTOWN.

RAILWAY BONDS. *Right of city to loan its credit — Under what circumstances it may be loaned — Construction of constitution — Construction of statutes — Right of city to cancel and re-issue bonds.*

1. Sec. 3, art. xi, of our state constitution, which makes it the duty of the

Rogan vs. The City of Watertown.

legislature, in providing for the organization of cities and incorporated villages, " to restrict their power of * * loaning their credit, so as to prevent abuses," recognizes their power, under some circumstances and for some purposes, to loan their credit.

2. In determining what these circumstances and purposes are, regard must be had especially to the cases in which and the purposes for which such corporations had been accustomed to loan their credit *before* the constitution was framed.

3. It appearing (from the debates in the constitutional convention and other sources of knowledge) that it was to works of improvement, like the building of railroads, canals, harbors, etc., that such loans of credit had been made, the constitutional provision must be held to refer to loans for those purposes.

4. The bond of a city executed in pursuance of an act of the legislature authorizing it to loan its credit to the construction of a railroad, *held* valid.

5. An act of the legislature (ch. 123, P. and L. Laws of 1853,) empowered a city to loan its credit by issuing bonds and delivering them to a railroad company. An amendatory act (ch. 406, P. and L. Laws of 1853,) authorizes the mayor and city council to execute and deliver to said railroad company, the whole or any portion of the bonds which said city had voted to aid the construction of said road, "upon such terms as may be agreed on by the parties." *Held*, that this should *not* be construed as authorizing a *donation* of the bonds to the company (which would render the act invalid), but merely as giving the mayor and council an unlimited discretion in fixing the terms upon which the bonds shall be delivered *as a loan of credit*, as prescribed in the previous act.

6. In case of an affirmative vote by the people of said city, the mayor and council are empowered, upon the requisition of the railroad company, to "execute bonds running to and for the benefit of said company, in such form and denominations as they may direct." *Held*, that bonds executed by said mayor and council, and delivered to and accepted by the company, are not void because made payable to " D. J. or bearer," instead of to said company or bearer.

7. Bonds issued by a city in payment of its subscription to the capital stock of a railroad company, under ch. 123, Laws of 1853, *held* valid, following *Phillips v. Town of Albany*.

8. Where a city, by the issue of its bonds according to law, has created a debt against itself, it has power, like any other debtor, to enter into negotiations concerning said bonds, and to have them delivered up and canceled, and new bonds issued in exchange for them, without any special grant of authority therefor.

ERROR to the Circuit Court for *Jefferson* County.

Plaintiff in error brought his action in said court to recover the amount of interest coupons originally attached to and forming a part of bonds issued by the city of Watertown, in aid of the construction of certain railways. The complaint contained three counts, the first and second of which were upon coupons which had been annexed to bonds issued by said city in aid respectively of the Milwaukee and Watertown Railway, and the Watertown and Madison Railway, the bonds being issued in conformity with acts of the legislature of the state, authorizing the mayor and city council "to loan the credit of said city" in aid of the construction of said railways, and also in conformity with the ordinances of the city, passed in furtherance of the acts of the legislature. The third count was upon a coupon which had been annexed to bond No. 177, which was a re-issue in substitution for a prior bond of the same number and amount and corresponding in all particulars with the original bond, the original having been surrendered and canceled under the authority of a resolution of the common council of said city empowering the mayor and city clerk to cancel any of the bonds issued in aid of the Watertown and Madison Railway, and to execute in lieu of such canceled bonds, duplicates of the same number and amount and payable at the same time. In all other respects save the fact of its substitution, the bond declared upon in the third count was of the same issue as that in the second. The answer alleged that the bond and coupon constituting the first cause of action, had no validity because the Milwaukee and Watertown Railway was a private and not a public company, and that the defendant was not a subscriber to its capital stock, and had no authority to become such; also that the bond and coupon were in violation of the act under which they purported to be issued, in that they were made payable to one Daniel Jones instead of the company. Second, that the bonds and coupons constituting the second and third causes of action were void, because the Watertown and Madison Railway company was not the original payee

thereof.    Third, that the surrender and cancellation of the original bond No. 177, set up in the third count, was without authority of law.    Lastly, that the legislative acts under which the bonds were issued, were unconstitutional and void.

The court found as a conclusion of fact, that the plaintiff was the holder and owner of the coupons set out in his complaint, and as conclusions of law, found the following:    First, that the coupon set out and constituting the first cause of action, was illegal and void.    Second, that the coupon constituting the second cause of action, was a valid and subsisting claim in favor of the plaintiff against the defendant; and that the defendant was indebted to the plaintiff thereon in the sum of forty dollars, with interest from the 1st day of January, 1858. Third, that the coupon constituting the third cause of action, was illegal and void, and the plaintiff was not entitled to recover thereon.

Judgment being entered in accordance with the above findings, plaintiff brings this action to reverse the judgment.

*C. B. Skinner*, for plaintiff in error, to the point that cities were empowered to loan their credit in aid of railways, cited Article XI, Sec. 3, of the constitution of the state; *Clark v. Janesville*, 10 Wis., 136; *Bushnell v. Beloit*, 10 Wis., 195.    To the objection that the bonds were payable to Daniel Jones, or bearer, instead of the railroad company, and to the further objection as to the cancellation and reissue of bond No. 177, counsel argued that they were at most mere irregularities or informalities in the execution of the power, which did not affect the validity of the bonds, citing *Veeder v. Lima*, 19 Wis., 297, and *Clark v. Janesville, supra.*

*Enos & Hall*, for defendant in error, contended, among other things, that the bonds were issued merely for a private purpose, and that defendant was never a subscriber to the stock of the railway company, and had no authority under the acts of the legislature in question, to make such subscription, citing *Whiting v. Sheboygan and Fond du Lac R. R. Co.*, 25 Wis., 167.    To

Rogan vs. The City of Watertown.

the point that the bonds were invalid in that they ran to the wrong obligee, counsel cited *Marsh v. Fulton County*, 10 Wal., 676.

DIXON, C. J. The circuit court found against the plaintiff in error, who was the plaintiff below, upon the first and third count or cause of action set out in the complaint, and in his favor upon the second count.

We are not advised of the grounds of this decision, except as they are shown by the briefs of counsel for the respective parties, from which it would seem that the ground of decision against the plaintiff, on the first count, was that the bond therein described, to which the interest warrant or coupon sued on was annexed, was given upon or in pursuance of a *loan of its credit* by the city of Watertown to aid in the construction of the Milwaukee and Watertown Railroad. The bond, with interest warrants annexed, of which the interest warrant in suit was one, appears to have been issued on the first day of August, 1853, under and in pursuance of chapter 123, Pr. and Local Laws, 1853, and the amendatory act, chapter 406 of the same laws, which authorized the mayor and city council "to loan the credit of the said city" to the Milwaukee and Watertown and Berlin railroad companies, in the sum of one hundred and twenty thousand dollars, that is to say, in the sum of sixty thousand dollars to each of said companies. The ground of decision with respect to the coupon declared on as the third cause of action, appears to have been that the bond therein described, and to which the coupon was annexed, was unlawfully issued by the mayor and common council in substitution for a prior bond of the same number and amount, and payable at the same time, and drawing the same rate of interest, etc., the bond in lieu of which it was issued having been surrendered and canceled at the time of such issue. This substituted bond, except that it was so substituted, was of the same issue of bonds as that set out in the second count of the complaint, upon one

coupon of which declared on in that count, judgment was given in favor of the plaintiff. That issue of bonds was made and the same delivered in payment for stock subscribed and taken by the city in the Watertown and Madison Railroad Company, under the provisions of chapter 127, Pr. and Local Laws, 1856. Such we infer, as well from points and arguments of counsel, as from the findings and judgment themselves, to have been the grounds of decision in the court below, and as counsel confine themselves to the same or other kindred questions in argument here, so we shall consider and determine no others.

First, it is said that the loan by the city of its credit to the Milwaukee and Watertown· Railroad Company, could not be authorized by the legislature, and that the bonds issued for that purpose, were void. The principle established in *Whiting v. The Sheboygan and Fond du Lac Railroad Company*, 25 Wis., 167, would, we think, necessarily lead to this conclusion, if there was nothing in the constitution of the state, expressly, or by reasonable and fair intendment and implication, leading to the opposite conclusion. But it clearly seems to us that there is such provision in the constitution with respect to the powers of *cities* and *incorporated villages*. We refer to Sec. 3, Art. XI, declaring that "it shall be the duty of the legislature, and they are hereby empowered to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, *and loaning their credit*, so as to prevent abuses in assessments and taxation, and in contracting debts by such corporation." This language recognizes in the clearest possible manner, the power of these corporations, under some circumstances, and for some purposes, to loan their credit, and the authority not only, but also the duty of the legislature to regulate, control and restrict such power. The constitution, speaking in general language, does not specify the purposes for, nor the circumstances under which such credit may be loaned. These are left open to be ascertained by construction, but that loans of credit for some purposes, and under

Rogan vs. The City of Watertown.

some circumstances, were intended, is too clear to admit of doubt or argument. It will not do in such a case, because the purposes are undefined and the power recognized only in general terms, and so may be susceptible of misapplication or abuse, to say that therefore the power does not exist.

The framers of the constitution intended something by these words, and we are bound to give some effect to them. They cannot be stricken out by judicial construction or made imperative in apprehension of the evils which may ensue from an exercise of the power. It is no answer to say that the power has been or will be improvidently or ruinously exercised or used by the cities and villages, or by the legislature, nor is it material that this court believes that other municipal corporations do not possess the same power, or that cities and villages should not have or exercise it. The constitution being express upon the subject that the power exists or may be granted by the legislature to cities and incorporated villages, it only remains for the courts to construe and apply the language as the framers intended. In this work of construction or arriving at the intention of the framers, regard must be had to the circumstances under which the language was used, the previous history of these municipal ·corporations, and the powers which they had been accustomed to exercise, and particularly must we ascertain, if possible, the cases in which or purposes for which they had been accustomed to loan their credit, for to such the framers undoubtedly had reference. By this mode of interpretation the intention of the framers is made plain, for it is well known that it was only to such works of improvement as the building of railroads, canals, harbors and the like, that such loans of credit had previously been made. If this were otherwise doubtful, as it seems to us it cannot be, the debates in the convention by which the constitution was formed and submitted, so far as the same are reported, clearly show that such was the meaning of the framers. It would be as far from the true intent and spirit of the constitutional provision, to deny

the existence of this power in cities and incorporated villages, when exercised for these purposes, as it would be, according to the argument of counsel, to attempt to extend the power to loan credit for every conceivable purpose for which the legislature might see fit to authorize, or the cities or villages to grant such loan. The language of the constitution is general, necessarily so, it is true, but it is not for that reason incapable of perversion, as counsel seem to suppose. It is the opinion of this court, that the loan of credit in the case was authorized by the constitution, and that no objection to the validity of the bond exists on this ground.

Another objection to the same bond, is that the act under which it was issued, (ch. 123 Pr. and Local Laws, 1853), as amended by section two of chapter 406, of the same laws, authorized a donation of the bonds by the mayor and city council, to the railroad company. The last named section authorized the mayor and city council to execute and deliver to the railroad company, the whole or any portion of the city bonds which had been voted, to aid in the construction of the railroad, "upon such terms as might be agreed on by the parties." Considered as an amendment of the previous act, we do not think these words can be construed as authorizing a donation of the bonds to the railroad company. The intention, no doubt, was to give the mayor and city council an unlimited discretion in fixing the terms upon which the bonds should be delivered *as a loan of credit*, as prescribed by the previous act, but not to authorize the delivery of them otherwise than as such loan. Such is the fair and reasonable import of the language, and we are bound so to construe it, especially since the other construction would result in defeating the law upon constitutional principles.

A still further objection to the same bond is, that it was made payable to "Daniel Jones or bearer," and the coupon was in like manner payable. The fourth section of the act, (ch. 123 aforesaid) declared that if the result of the election should be

in favor of the issue of the bonds, the mayor and council should, upon the requisition of the railroad company, " execute bonds running to and for the benefit of said company, in such form and denominations as they may direct," etc. It is not claimed that the bonds were not delivered to the company or used " for the purpose of aiding in the construction of the road," as prescribed by the first section. The point is, that they should have been made payable to the railroad company or bearer, instead of Daniel Jones or bearer. Had the legislature intended to fix a form of bond which must not be departed from, or which could not be varied, from any motives of convenience or facility in the transaction of the business, then such intention must, we suppose, have governed, and a departure from the established form might have been fatal. But such, evidently, was not the intention of the legislature. It is seen from the language quoted that the form of the bonds, to some extent, if not entirely, was left optional with the railroad company, and when the bonds were spoken of as running to and for the benefit of the company, nothing more was intended than that such should be the purpose to and for which the bonds should be issued and delivered. This, we think, is very obvious, and further remark on this point is not required.

The bonds mentioned and described in the second and third counts were issued in payment of a subscription to the capital stock of the Watertown and Madison Railroad Company, under the provisions of the act above referred to. As a payment of such subscription, the validity of those bonds cannot be questioned, for the reasons given in *Phillips v. The Town of Albany*, 28 Wis., 340.

An objection to these bonds also is, that they were made payable to " Wm. B. Hibbard or bearer," whilst the act (sec. 5) authorized the mayor and city council " to execute, issue and deliver, to the said railroad company, city bonds in payment thereof," etc. This objection is like that to the other bond, technical and unfounded, and so cannot be sustained.

And the objection that the mayor and council had no power to make the substitution of the bond set forth in the third count, appears to us of the same character. The resolution of the city council, under which this was done, was that "the mayor and the city clerk be and they are hereby authorized to cancel any of the bonds issued by this city in aid of the Watertown and Madison railroad, and to execute in lieu of such canceled bonds, duplicates of the same number and amount and payable at the same time, and the bonds so canceled shall by them be laid before the common council, to be destroyed." It is objected that the power of the mayor and council was exhausted when the bonds were issued, and that this proceeding was without authority. By the issue and delivery of the bonds a debt had been created by the city, and with respect to such debt and the securities given, it was competent for the city, as for any other debtor, to enter into negotiations and to cancel or exchange its bonds without special legislative authority.

*By the Court* — Judgment reversed and *venire de novo* awarded.