## MERRILL v. TOWN OF MONTICELLO.*

*(Circuit Court, D. Indiana. December, 1882.)*

1. MUNICIPAL BONDS—POWER TO ISSUE.

Municipal corporations have no general power to issue commercial paper; such power must be derived from legislative authority.

2. PURCHASERS OF—MUST TAKE NOTICE.

Where bonds, on their face, recite that they are "funding bonds," and issued to fund the town's indebtedness, purchasers assume, at their peril, that the legislature had authorized the issue of bonds for that purpose.

3. DEFENSES.

No such power having been granted by the legislature, purchasers, notwithstanding the form of the bonds, hold them as non-negotiable paper, and subject to all legal and equitable defenses in favor of the maker.

4. ANSWER.

An answer which avers that the bonds were issued without legislative authority in that behalf, and that the town did not get the proceeds of the same, and did not derive any benefit therefrom, *held* good on demurrer.

The case of *Ragan* v. *City of Watertown,* 30 Wis. 259, distinguished from the case at bar.

*Roach & Lamme,* for plaintiff.

*David Turpie* and *W. E. Uhl,* for defendant.

GRESHAM, D. J. On the twentieth day of May, 1878, the town of Monticello made and issued a series of coupon bonds, each for $100, and amounting in all to $21,000, payable in gold, to bearer, at New York, in 10 years, with interest at the rate of 7 per cent. per annum, in gold, at the same place. The principal of each bond was to become due and payable, at the option of the holder, on the non-payment of any coupon thereto attached, for 90 days after maturity. The words "funding bonds of the town of Monticello" conspicuously appear at the top of each bond, and each recites that "this bond is one of a series of $21,000 authorized by the said town by an ordinance passed by the board of trustees thereof on the thirteenth day of May, 1878, for the purpose of funding the indebtedness of said town." The coupons numbered 2, attached to each bond, were presented at the proper place, at maturity, and payment was refused. The plaintiff, as holder of the entire series, thereupon elected to declare the principal sum due, and brought this suit.

The amended answer avers that on the twenty-fourth day of January, 1869, a petition was presented to the board of trustees of the town, by the school trustees, for the issue of bonds to build a school-house, and on the same day the town trustees passed an ordinance

*Reported by Charles H. McCarer, Asst. U. S. Atty.

directing that there be issued to the school trustees $20,000 worth of coupon bonds, in denominations of $100 each, drawing interest at the rate of 10 per cent. per annum, payable annually; that on the first day of May, 1869, the town issued its bonds under this ordinance, amounting to $20,000, payable in 20 years; that these bonds, representing the sole indebtedness of the town at the time of their issue, are, as to the principal thereof, outstanding and unpaid obligations; that on the eleventh of May, 1878, the owners of the taxable property of the town petitioned the board of trustees of the town to contract a loan of $21,000 for the purpose of paying its indebtedness; that on the same day the board passed and entered of record the following ordinances:

"Be it ordained by the board of trustees of the town of Monticello, Indiana, that said town issue bonds in the sum of $21,000, in denominations of $100, bearing interest at the rate of 7 per cent. per annum, payable in gold, to provide the means with which to pay the indebtedness of said town. And be it further ordained, that when said bonds are issued they be placed in the hands of J. C. Wilson, a member of the board of trustees, for negotiation and sale; and further, that said bonds shall not be sold for less than 94 cents on the dollar."

—That on the twentieth day of May, 1878, the trustees issued the coupon bonds of the town to the amount of $21,000, bearing interest at the rate of 7 per cent. per annum, payable annually, and maturing as to principal in 10 years; that after their issue these bonds, which are the bonds sued on, were delivered to J. C. Wilson, for sale, who sold the same and converted the proceeds to his own use, the town deriving no benefit therefrom, and that at the time such bonds were issued the defendant was an incorporated town, containing not more than 1,300 inhabitants.

The legislature, by an act passed in 1852, provided for the incorporation of towns, and defined their powers. This act authorized debts to be contracted for the usual municipal purposes. Section 27 (Rev. St. § 3342) reads thus:

"No incorporated town under this act shall have power to borrow money, or incur any debt or liability, unless the citizens, owners of five-eighths of the taxable property of such town, as evidenced by the assessment roll of the preceding year, petition the board of trustees to contract such debt or loan; and such petition shall have attached thereto an affidavit verifying the genuineness of the signatures to the same; and for any debt contracted thereby, the trustees shall add to the tax duplicate of each year, successively, a levy sufficient to pay the accrued interest on such debt or loan, with an addition of not less than five cents on the hundred dollars to create a sinking fund for the liquidation of the principal thereof."

This section granted no power to contract debts or to fund indebtedness. It simply prescribed the mode in which the power elsewhere granted was to be exercised, and it was therefore a limitation upon that power. By acts subsequently passed, and in force in May, 1878, towns were authorized to contract debts in the purchase of ground and the erection thereon of school buildings, and to aid in the construction of gravel roads, and for some other purposes. But the powers granted by these acts were to be exercised under clearly-defined restrictions and limitations as to amount, time of payment, rate of interest, etc., and taxes were required to be levied, as in the section above quoted, for the prompt payment of the accruing interest, and the principal at maturity. Obviously it was not intended that indebtedness contracted under these acts should be renewed by issuing funding bonds or otherwise. If there was authority for the issue of the bonds of May, 1878, then the restrictions imposed by the legisature on the exercise of the power to contract debts were of no avail.

The common councils of cities were authorized, by acts passed in February, 1877, to fund their indebtedness. Rev. St. 632, 633. These acts applied to cities only. It was not until March 7, 1881, that an act was passed authorizing cities *and towns* to fund their indebtedness with bonds at par, drawing not more than 6 per cent. interest. The bonds in suit recite that they were issued to fund the town's indebtedness, and purchasers assumed, at their peril, that the legislature had authorized the issue of bonds for that purpose. No such power had been granted, and whether these bonds were intended to take the place of the outstanding series of 1869, or for some other indebtedness, notwithstanding their form, they were taken as non-negotiable paper, and subject to all legal and equitable defenses in favor of the maker. Municipal corporations have no general power to issue commercial paper. *Hopper* v. *Town of Covington,* 8 FED. REP. 777.

The demurrer to the amended answer was argued by counsel on both sides on the theory that the indebtedness to be funded was the outstanding bonds of 1869.

*Rogan* v. *City of Watertown,* 30 Wis. 259, was a suit on coupons attached to bonds which had been voted in aid of a railroad. The third paragraph of the complaint seems to have been upon a coupon which had been attached to a substituted bond. This bond corresponded in number, amount, time of payment, rate of interest, and in all other respects with the bond which was surrendered and canceled at the time of the substitution. This was a mere irregularity,

and the substituted bond was held valid. The case differs widely in its facts from the one at bar. If the town had got the proceeds of the bonds sued on, or had derived any benefit therefrom, the plaintiff would have a much stronger case.

Demurrer overruled.