## MUNICIPALITIES WITHOUT POWER TO REISSUE NEGOTIABLE BONDS WHICH HAVE BEEN LOST.

Superior Court of Cincinnati.

### THE CITIZENS NATIONAL BANK OF CINCINNATI v. THE CITY OF CINCINNATI ET AL.

Decided, June 1, 1909.

*Municipal Corporations—Without Power, Express or Implied, to Reissue Negotiable Bonds which have been Lost—City Without Protection in the Event of Subsequent Payment of Coupons—Limitations on the Substitution of Bonds for Those Outstanding—Renewal of Legal Evidence of Debt—What Constitutes "Accident" Against Which Relief May be Granted—Jurisdiction of Courts of Chancery in such Cases—Injunction—Pleading.*

1. The entire absence of any power in a municipality, either express or implied, to reissue a negotiable bond to take the place of one which is still outstanding and a continuing primary obligation, disqualifies a court of chancery from entertaining an application for a mandatory injunction to compel the issue of such a bond to take the place of one which has been lost.

2. Moreover, if such power existed, and it should be conceded that relief might be granted on the ground of "accident," equity would be very slow to say that the misplacing of such a bond through "inadvertence" was an accident within contemplation of that term; nor would jurisdiction be assumed against a party equally entitled to protection with the one seeking relief, as for example against a municipality with ever changing officers, with reference to a negotiable bond having forty-six years yet to run, notwithstanding the offer of the plaintiff to make a provision for indemnity in the event the bond should be found.

*Geoffrey Goldsmith,* for the demurrer.
*Paxton, Warrington & Seasongood,* contra.

HOFFHEIMER, J.

Plaintiff, a national bank of Cincinnati, seeks the equitable intervention of this court, and asks that the court compel the defendants to issue to plaintiff a substitute bond in place of one alleged to have been misplaced by it.

In its petition it asserts ownership of a certain coupon bond issued and sold by the city of Cincinnati on the 1st day of June, 1905, in the sum of $500, with interest at 3½ per cent. per annum, payable semi-annually, in December and June of each succeeding year, the bond itself maturing in June, 1905. The bond was one of seven hundred of a similar issue, and was numbered 649. It was issued in accordance with Ordinance 819, duly passed by the council of the city of Cincinnati, and it was duly signed by the mayor of the city. The bond and coupons are negotiable by delivery. It was puchased in the open market December 28, 1905, after one coupon had been paid. Before the arrival of the next interest-paying period, plaintiff "*through inadvertence had mislaid said bond*" (petition), and since then no coupons have been paid. At some time after the loss or misplacing of the bond, plaintiff requested of defendants a substitute or re-issued bond; and it offered, upon such substitution or reissuance, to give the defendants "proper" indemnity. Defendants refused to comply with such request, and thereafter, on August 13, 1908, suit was brought in this court to compel defendants to substitute or reissue a bond of the value of the one alleged to have been lost, and incidentally judgment was asked for the coupons that had fallen due.

To this petition the defendants filed a joint and general demurrer, and the question presented to the court, stripped of all verbiage, is this: Has this court, sitting in chancery, the power under the circumstances of this case to compel defendants to substitute or reissue a bond in place of the one lost or misplaced, and if there is power resident in the court so to do, are the circumstances of this case such as warrant the exercise of the power?

The defendants, *arguendo*, contend that no relief should be afforded the plaintiff, because of *laches;* that plaintiff's remedy is at law, and not in equity; that whlie there may be relief in equity in *typical* cases of "accident," this is not such a case, because it presents points of difference, which will be noted in the course of the opinion.

Since plaintiff predicates its claim for relief on an instrument alleged to be owned by it and alleged to be lost or misplaced, the

relief sought comes under the head of "accident," a head of equity that is "very ancient and coeval with the existence of equity itself."

Assuming that equity has jurisdiction to grant relief on the ground of accident, are the circumstances such as to warrant its exercise here?

Originally, before the equitable doctrines had been fully developed and defined, the jurisdiction growing out of "accident" was understood to embrace every kind of accident in which an unexpected result had been produced by accident—in a word, every kind of misfortune was included. (Lord Coke, 4 Inst., 84.)

But Mr. Pomeroy, in his work on Equity Jurisprudence, directs attention to the error of Lord Coke (Sec. 825 and notes), and in formulating a definition to cover "accident," expresses an important limitation.

While the author confesses the difficulties that prevent an accurate definition, because of the essential elements to be considered—the difficulty that causes the courts generally to refrain from attempting any definition—nevertheless one thing is made *clear*, and that is, that the thing complained of as the "accident" must be an unforseen and unexpected event, occurring external to the party *affected by it and of which his own agency is not the proximate cause.* [Italics, the author's.]

And in Smith's Manual of Equity Jurisprudence, 36, it is stated that "accident is an unforseen and injurious occurrence not attributable to mistake, *neglect,* or misconduct."

Not only these definitions, but the cases hold that no relief is granted on the ground of accident, where the alleged accident is the result of plaintiff's own fault or carelessness. (Pomeroy Equity Jurisprudence, Section 828, and cases cited.)

It appearing from the petition itself that the bond in question was lost through plaintiff's inadvertence (synonomous with heedlessness, inattention, carelessness—Century Dictionary); equity would probably be very slow to say that the *misplacing of a bond through inadvertence* was an "accident."

But even where it appears that there was an accident as equity understands it, the jurisdiction in equity because of accident

will not be exercised against a party who is equally entitled to protection with the one who seeks relief from the effects of accident.    (Pomeroy Equity Jurisprudence, Section 829.)

In view of such principle, ought this court relieve the plaintiff from the effects of what it is not clear is an accident, where it is manifest that to do so will work hardship and inconvenience to the other party?

The municipal bond here in question and its coupons being negotiable (*Clark* v. *Janesville*, 1 Biss., 98), is good as against the city in the hands of a subsequent *bona fide* taker for value before maturity (*City of Elizabeth* v. *Force*, 29 N. J. Eq., 287), and the city having been notified of the loss, it seems is not protected by the subsequent payment of coupons to one who does not show himself a *bona fide* purchaser for value before maturity.    (*Bainbridge* v. *Louisville*, 83 Ky., 285.)

Throughout the life of this bond, therefore, that is, for a period of forty-six years, the city, through no fault of its own, but through plaintiff's *inadvertence*, has already the burden, in order to protect itself, of ascertaining whether the presenter of a coupon is a *bona fide* purchaser before maturity.

Considering this increased burden which defendant must now necessarily assume, and all without any fault on its part, and considering, further, the character of this defendant, that it is a municipal corporation with ever changing officers, the difficulties, because of such fact, that would necessarily lie in the way of caring for and watching the indemnity and of giving attention to its sufficiency during the ensuing forty-six years, it would seem to me, in view of the principle just referred to, that the situation is such as to justify the court in refusing relief, because of the ground upon which it is sought, to say nothing of the claim by defendant that plaintiff was further guilty of laches.

But if it appear that the court is ultra-conservative in this deduction, and if it can be said that plaintiff is not, for the reasons stated, disqualified from invoking the equitable intervention of this court, I am still unable to understand how this court, by a decree in equity, or by a mandatory injunction, can grant the relief asked and thereby compel these defendants to do an act which officially they are without power to do.

Counsel for the city, for the purpose of testing the applicability of mandatory injunction when invoked as against a municipality and its officers, likens the same (and the authorities show very properly) to the legal writ of mandamus.   (26 Cyc., 143, and cases cited.)

And authorities are cited to show that the writ does not issue unless it appear that the party to be coerced had the plain power to do the act.   (*Commissioners of Barnesville* v. *Logue,* 129 U. S., 493.)   And that the act must be ministerial and not involve discretion and judgment.   (*United States* v. *Seaman,* 17 How. [Curtis], 470, 1, 2.)

That these defendants as officials had no authority or plain power to do the thing requested would seem to follow from an examination of the statutes which deal with the issuance of bonds, and from what this court has heretofore said in *City of Cincinnati* v. *L. & N. Railroad,* 4 Nisi Prius—New Series, 217 (affirmed by the Supreme Court), that municipalities have only those powers which are *expressly* granted and those *necessarily implied* from *express grants;* that all powers are strictly construed, and all doubtful claims of power are resolved against the exercise of the power.

Examination of the various statutes which govern the city officials in the issuance of bonds (see Ellis' Code, 3d Ed., pp. 274 to 302 inclusive) reveals no section by which express authority is conferred to substitute or reissue a bond, and I am unable to imply such power from the power to issue the original bond.

Cases which hold that the power is implied to take up a certain issue before maturity and reissue in its stead, are certainly not authority for reissuing or substituting a bond for an *outstanding, continuing primary obligation.*

Thus *Rogan* v. *Watertown,* cited by plaintiff, 30 Wis., 259, syllabus 8, is to be distinguished.

As said in *2 Beach on Public Corporations,* Section 928:

"When the municipality has the power to issue bonds, and they have been issued, it may sustitute other bonds of the same nature *in their stead*—may change the form but not the substance of its liability."

In other words, in those cases, the original power to issue bonds is not exhausted because the reissued bonds are in effect

made in pursuance of the grant of power, the form of the obligation alone being changed. Consequently the power has not been exhausted. Here, however, there is no question of surrender of the original primary issue and of its cancellation. Indeed, the bond as originally issued by the city is *still outstanding* and is a *continuing primary liability,* and certainly as to it and the loan evidenced by it there has been a *complete exhaustion of power.*

The plaintiff contends, however, that the relief asked for does not concern itself with the exercise of municipal power, but that the question is, since the defendant may "sue and be sued" (Revised Statutes, Sec. 1536-100), whether the city may be compelled, like any ordinary individual and in the manner sought by plaintiff, to acknowledge its lawful obligation.

In other words, can not this court, in the manner sought by plaintiff, "decree renewal of the legal evidence of the debt" which primarily was evidenced by the misplaced bond?

Conceding that the city may "sue and be sued," I take it, that this paragraph must have reference to some power which it has, either express or implied, and I fail to understand how that section can confer any *new power* on these defendants with reference to issuing bonds, and since there is no express or implied power by which these officials could voluntarily do what plaintiff now seeks to compel them to do, whether we term the relief "a decreeing of renewal of the legal evidence of the debt," or "mandatory injunction" to compel the issuance of a substitute or a reissued bond, it would seem to me the result would still be the same, for in either event the court, by judicial decree, would be attempting to do an act smacking of the legislative in character, and tantamount to investing these officials with powers which, under the law, they have not.

It is this very lack of power in defendants, a municipal corporation, and municipal officers sitting in their official capacity, to voluntarily do what plaintiff asks this court to compel them to do, that distinguishes this case from what we may term the *typical* case in "accident," where the court's power is invoked to compel the doing of an act by private individuals which act the individuals could voluntarily have done; and it is this difference which ren-

ders it impossible for a court of equity to grant the relief sought, even if the occasion would seem to justify it.

Diligent search of the authorities fails to reveal a single direct precedent to sustain the contention of the plaintiff against a municipality or its officers.

*Craig* v. *Chicot Company*, 40 Ark., 233, cited by plaintiff, was an action at law, and the court, in interpreting the statute which conferred the power, interpreted the word "scrip" as including the word "warrants." In *Auditor* v. *Johnson, Executrix*, 1 Hen. & Munf. (Va.), 536, what was said as to decreeing renewal of legal evidence seems to be mere *dictum*, and the case, which is an old one, appears to have been nowhere followed.

*Rogan* v. *Watertown* has already been distinguished, *supra*. And no other case cited by plaintiff affords this court any basis to indirectly confer any power on these defendants by a decree to renew evidence in the manner prayed for, or by mandatory injunction to do a thing which as officials these defendants have neither any express or implied authority in the law to do.

It is suggested by defendants that plaintiff is not without remedy at law; that it is amply protected on its chose in action, and that the law provides a method for perpetuating testimony.

Bue whether the law affords plaintiff a complete remedy, or not, or whether relief must be sought through a legislative enabling act, I do not now undertake to determine. What I do determine is, that, for the reasons given, this court can not entertain the action, and that there is no power resident in this court to grant the primary relief sought, and that, consequently, there can be no judgment on the coupons due, which is the incidental relief sought.

The demurrers are accordingly sustained and the petition dismissed.